## HEUSSER v. CONTINENTAL LIFE INS. CO.

*(Circuit Court, D. Connecticut. May 12, 1884.)*

1. LIABILITY OF LIFE INSURANCE CORPORATION FOR DIVIDENDS.
    Where annual dividends are declared by a life insurance company, in accordance with an established rule, and the acts of the officers show that they are payable on certain classes of policies, a subsequent attempt on its part to limit the meaning of the vote, and make it at variance with the contemporaneous written rules and the acts of the company, is vain, the attempt being evidenced by the erasure of the dividend indorsement from the premium notes, and the company will be liable for the amount of the dividends so erased.

2. POLICIES INCLUDED UNDER TERM "RENEWED."
    The office of a renewal of a life insurance is to prevent discontinuance or forfeiture; and the word "renewed," in the vote of the directors of an insurance company granting dividends upon certain policies answering this description, includes participating, limited-payment policies, which have been prevented from forfeiture prior to the passage of the dividend.

At Law.

*Charles J. Cole,* for plaintiff.

*Charles E. Perkins,* for defendant.

SHIPMAN, J.   This is an action at law, which was tried by the court, the parties having, by a duly-signed written stipulation, waived a trial by jury.   The facts which are found to have been proved, and to be true, are the following:

On April 4, 1867, in consideration, among other things, of the annual premium of $386.90 in hand paid and to be paid to the defendant by Susan Heusser, the wife of the plaintiff, on or before the fourth day of April in each and every year during the term of 15 years, the defendant, a life-insurance company duly incorporated and located in Hartford, Connecticut, made its policy of insurance in writing, and thereby assured the life of the plaintiff, now of Syracuse, New York, in the amount of $5,000.   In and by said policy of insurance, it was agreed that if, after the receipt by said company of not less than two annual premiums, default should be made in the payment of any subsequent premium, said policy should then be binding on said company for as many fifteenth parts of the sum originally insured as there should have been complete annual premiums paid, without subjecting the assured to any subsequent charge, and that if the plaintiff should survive until April 4, 1882, the amount insured should be paid to him, deducting therefrom all his indebtedness to the company, if any, then existing.   Five consecutive annual premiums were paid by Susan Heusser to the defendant upon said policy.   Said payments of premium ceased on April 4, 1871.   On April 4, 1882, Henry Heusser was and still is living.   One-half of each annual premium was paid in cash, and one-half was paid by note of Henry Heusser, the interest being paid in advance.   On April 4, 1882, the defendant held and still holds four of said notes, each for $193.45, and dated on April 4th, in the years 1867, 1868, 1869, and 1870, respectively, each payable 12 months after date to the order of the defendant, with interest, and each having been given for one-half of the premiums which were payable at the respective dates of said notes.   On the first note the following indorsement had been made, dated April 4, 1872: "Received on the within note one hundred and thirty-five 75-100 dollars, dividend."   On the second note the same indorsement had been made, dated April 4, 1873.   On the third note the following indorsement had been made, dated April 4, 1874: "Received on the within note thirty 20-100 dol-

lars, dividend." Each one of said indorsements was, in 1880, erased by lines drawn through them, respectively, by the secretary of the company, who also added the words, "Error—no dividend." This was done with the knowledge and approval of the directors. These indorsements were made by the direction or under the instructions of the president or secretary of the company, in the usual course of business, and, as was supposed, by authority of the following votes of the directors of said company, the first having been passed February 6, 1871, the second on February 19, 1872, and the third on December 2, 1873:

"Voted, that a dividend from the surplus of the company of 50 per cent. upon life policies entitled to participate in the profits which were issued prior to January 1, 1869, and of 40 per cent. upon endowment policies of the same year, be declared and made payable, in accordance with the rules of the company, upon premiums paid in 1868, when renewed previous to January 1, 1873."

"Voted, that a dividend from the surplus of the company of 50 per cent. upon life policies entitled to participate in the profits which were issued prior to January 1, 1870, and of 40 per cent. upon endowment policies of the same year, be declared and made payable, in accordance with the rules of the company, upon premiums paid in 1869, when renewed previous to January 1, 1874."

"Voted, that a dividend be, and hereby is, declared to those policy-holders entitled to participate in the profits of the company, payable January 1st next, and thereafter during the year ending December 31, 1874, as the several policies may be renewed, in accordance with the contribution of each to the surplus, using the following assumption. * * *"

Indorsements like those made upon the notes in question were made, when the interest was paid, and not otherwise, upon all premium notes upon this class of endowment, non-forfeitable, participating policies, which had lapsed in part, but which were existing policies at the time the indorsements were made, and which in other respects were included within the provisions of said respective votes. If the interest was not paid upon a note, no indorsement was made. About 40 per cent. of such notes received the indorsement in 1872 and in 1873, and a much less proportion in 1874. There was no difference in the policies pertaining to the notes which received and which did not receive the indorsement, except that in the former case the interest had been paid upon the notes, and in the latter it had not been paid. Similar erasures were made by the secretary, after the year 1880, upon all similarly indorsed premium notes belonging to this class of policies, when the policies upon which the notes were given matured and became payable.

The following statement was contained in the prospectus of the defendant, which was prepared by the secretary of the company in 1868, and was circulated among the agents and policy-holders:

"On all participating policies dividends will be paid annually, commencing four years after the payment of the first premium, although when credit is given for part of the premium they are practically available in advance, lessening each annual payment. They will be paid in cash when the full premium is paid in cash, or applied to cancel the notes of those who elect to have credit for one-half; and, in the settlement of a policy, a dividend will be allowed on each premium which has been in possession of the company for a full year, and on which no dividend has been paid.

"Dividends based upon the rate paid will cease when they equal the payments in number; if based upon the ordinary life rate, they will continue during life; and if on the endowment rate, during the existence of the policy. If the annual premiums on limited-payment policies are discontinued before the

specified number have been paid, the dividends thereafter will be based on the continued rate for the same kind of insurance, and will continue until the number of dividends equals the number of annual premiums paid."

The first of said paragraphs was repeated in another circular, which was prepared by the company for distribution and was circulated. The dividends of 1872 and 1873 were computed according to the rule stated in the first-part of the third paragraph. These three paragraphs contained the company's regulations or rules prescribed for the management of dividends, and the practice of the company continued to be in accordance therewith, at least until 1876. The amount of dividends which were paid during the years 1872, 1873, and 1874, and which included the indorsements in question, was annually reported to the stockholders of the company. It is admitted that one other and subsequent dividend of $31.21 was properly indorsed upon the fourth note. The interest upon the amount of the notes, as they were diminished by all said indorsements, was demanded by the secretary after said erasure, the circular stating the amount of the notes to be $440.86, and was paid to April 4, 1882. This fact is not material upon the construction of the said three votes, and was not admitted for that purpose.

The only question in the case is whether the amount of the three erased indorsements should be deducted from the amount claimed by the defendant to have been due upon said notes on April 4, 1882. This question depends upon the construction to be given to the word "renewed" in the three votes which have been quoted. For example, in the vote of February, 1871, the dividend is declared upon premiums paid in 1868, when the policies are "renewed" previous to January 1, 1873. The defendant says that this language can refer only to policies which are renewed or prevented from forfeiture by the payment of a premium, and, as a non-forfeitable endowment policy, which had lapsed *pro rata,* but which was a paid-up policy for a portion of the amount originally assured, was not continued in force or prevented from forfeiture by the payment of an annual premium; that the word "renewed" did not apply to such a policy. The plaintiff insists that no such literal meaning is to be given to the language, but that the vote is to be construed in harmony with the contemporaneous written rules of the company, and that the contemporaneous acts of the company, in accordance with the rules, should have an influence in determining what was meant by the votes.

It certainly appears from the printed prospectus that a dividend was promised to be allowed in the settlement of a policy upon each premium which had been in the possession of the company for a year; and that, notwithstanding annual premiums on limited-payment policies had been discontinued before the specified number had been paid, it was understood that dividends thereafter, based on the continued rate for that kind of insurance, would continue until the number of dividends equaled the number of annual premiums paid. This rule declares the intended practice of the company. If the vote is to be construed as confined to policies which are prevented from forfeiture by the prompt payment of an annual premium, such a construction would not be in harmony with the rule of the company, and would

also be contrary to its uniform practice when the interest upon the premium notes had been paid. Annual dividends were declared in accordance with the rule, and the officers showed by their acts that the intent of the votes was to make the dividends applicable to this policy and to all others in like circumstances. The attempt of the company in erasing these indorsements was to place, in 1880, for its own advantage, a limited meaning upon the language of the votes of 1871, 1872, and 1873, when such meaning was at variance with the contemporaneous written rules and with the contemporaneous acts of the company.

The office of a "renewal," as it is termed, of a life-policy is to prevent discontinuance or forfeiture, and, by the word "renewed," the respective votes meant to include, and did include, participating, limited-payment policies which had been prevented from forfeiture prior to the dates respectively mentioned.

Let judgment be entered for the plaintiff for $1,225.80, with interest from April 4, 1882.