**BLAIR et al. v. BISHOP'S RESTAURANTS, Inc., et al.**

No. 32782.   March 28, 1950.

Rehearing Denied April 18, 1950.

*217 P. 2d 161.*

Mosteller & McElroy, of Oklahoma City, for plaintiffs in error.

Keaton, Wells, Johnston & Lytle, of Oklahoma City, and T. Austin Gavin, of Tulsa, for defendants in error.

JOHNSON, J. The evidence introduced in support of the allegations of plaintiff's petition and defense thereof establishes that plaintiff corporation was organized in 1923; that it was then known as the K. C. Waffle House and that ever since it has been engaged in operating a restaurant in the City of Oklahoma City. The name of the corporation was afterwards changed to Bishop's Restaurant, Inc., of Oklahoma City.

In 1931 defendant Blair was engaged by plaintiff as its assistant manager. All of the stock in the corporation at that time was owned by W. Bishop, J. H. Powers and T. S. Pearson. Bishop was then president, Powers vice president and Pearson secretary-treasurer.

On November 2, 1942, a written contract was entered into between Blair, Bishop, Powers, and Pearson, whereby Blair was engaged as manager of the corporation for a period of one year and as long thereafter as agreeable. At that time Powers, Bishop, and Pearson each sold Blair 10 shares of stock at the par value price of $100 per share. The contract of employment was approved by the board of directors of the corporation.

On November 22, 1943, Blair was elected vice president of the corporation, and his contract as manager was renewed for a period of one year. Blair by then had acquired 30 additional shares of stock of the corporation from

Pearson. On June 21, 1944, Blair purchased from Pearson the remaining stock he then held in the corporation amounting to 81 shares. The status of stock ownership in the corporation was then as follows: Blair, 47 per cent or 141 shares; Bishop, 34 per cent or 105 shares; and Powers, 18 per cent or 54 shares. Subsequently, W. A. Phipps acquired one share of stock and Blair sold 47 shares of his stock to defendant Tom L. Green. At the time Pearson sold and assigned the remaining part of his stock to Blair, he was the duly elected secretary-treasurer of the corporation. After having severed his connection with the corporation, no successor secretary-treasurer was elected by the board of directors, but it is shown that Blair acted as secretary-treasurer by consent of all the stockholders.

Blair left for Florida February 5, 1945, on a vacation, and while on such vacation Mr. Powers was placed in charge of the business in Oklahoma City as manager by Bishop, the president of the corporation, and Bishop notified the First National Bank & Trust Company by letter that thereafter checks on the account should be honored only when signed by Powers and countersigned by Ann Yates, and also advised the bank that the authority of Blair to draw checks on the account was withdrawn.

After Blair returned from Florida, and on the 28th day of March, 1945, a conference was held between Blair, Bishop, and Powers in Tulsa relative to the management of the plaintiff corporation in Oklahoma City. Blair was advised by Bishop that he, as president of the corporation, had dismissed him as manager and that Powers had been selected in his stead. The action of Bishop in dismissing Blair as manager was ratified by the board of directors at a meeting held in Oklahoma City on May 3, 1945. At that meeting new directors and other officers of the corporation were elected. Blair refused to deliver possession of the books and records of the corporation to the newly elected officers and refused to recognize as legal his purported dismissal as manager. Thereupon, the corporation instituted an action for the purpose of obtaining possession of the business, its books and records. The action resulted in a judgment in favor of plaintiff removing Blair as manager and commanding him to deliver possession of the books and records of the corporation to the then manager, Powers. This judgment was entered on May 26, 1945, and is now final.

Subsequent to the date upon which defendant Blair was notified by Bishop that he had been dismissed as manager, but prior to May 3, 1945, the date upon which Bishop's action was ratified by the board of directors of the corporation, and between the dates of March 30, 1945, and April 8, 1945, Blair drew from the bank account of plaintiff in the First National Bank & Trust Company the sum of $60,050.05 and invested the same in United States Bonds of the par value of $60,000, which bonds were made payable to bearer. No record was made of such transaction on the books of the corporation. The bonds were kept by Blair in plaintiff corporation's safe until they were delivered by him to his counsel, who in turn deposited them with the First National Bank & Trust Company under agreement that they were to be held by the bank, as trustee, subject to the further order of the court.

On June 5, 1945, one day prior to the instant suit, Blair by letter advised Bishop and Powers that on the 30th day of March he had, as secretary-treasurer of the corporation, declared a dividend in the sum of $60,000 and notified each of them that their share would be delivered to them upon request. Section 4, article 5 of the by-laws of the corporation provides:

"Whenever the surplus profits of the Company amount to one per cent, or

more, of the capital stock, the secretary-treasurer may declare a dividend on the shares of stock."

While there is some controversy as to the exact amount of the surplus profits of the corporation as of March 30, 1945, the evidence clearly shows the surplus profits of the corporation were greatly in excess of one per cent of the capital stock of the corporation. Defendant Blair offered further evidence to sustain the allegations of his supplemental answer and cross-petition, but same was refused.

The trial court rendered judgment in favor of plaintiff and against defendants Blair and Yates for the recovery of the United States Bonds in the sum of $60,050.05, decreed that the bonds constituted property of plaintiff, enjoined defendants Blair and Yates from disposing of the bonds, and rendered judgment against Blair for interest at the rate of 6 per cent on the sums withdrawn from the bank and invested in bonds from the date of various withdrawals up to July 9, 1945, less interest earned on the bonds between these dates. Blair's supplemental answer and cross-petition was dismissed without prejudice.

The defendants failed to supersede the judgment, and it is conceded that the bonds have been returned to the plaintiffs. In this connection it is now asserted by the plaintiffs that this fund and all other surplus funds of the company have been spent in the operation of the business, the repair and redecoration of the building wherein the business is conducted and in increased salaries fixed by the board of directors since this suit was tried.

It is conceded that Blair had never been elected secretary-treasurer of the corportaion by the board of directors, as provided by 18 O. S. 1941 §105. But there can be no doubt that for sometime before, and during April, 1945, Blair, with the knowledge and apparent acquiescence of Bishop and Powers, acted as secretary-treasurer of the corporation and performed all the duties of such secretary-treasurer. He had custody of the books and records of the corporation and its corporate seal. During that time he transacted all the business of the corporation. He wrote all the salary checks payable to Bishop and Powers and signed the same as secretary-treasurer. Bishop and Powers accepted and endorsed these checks and received the money thereon. The corporation and its stockholders had all the benefits of the services of Blair as secretary-treasurer of the corporation. During all that time, and down to April 26, 1945, Blair performed all the duties imposed on the secretary-treasurer by the by-laws and was secretary-treasurer de facto. This was a private, close corporation consisting of only four stockholders, three of whom were the directors, and the acts of the officers were usually very informal. Generally surplus earnings were distributed to the shareholders as additional salary and bonuses in lieu of dividends, and such payments were not in proportion to or according to the amount of shares of stock owned.

Bishop, the president of the corporation, did not have authority to discharge Blair as manager and acting secretary-treasurer. This power was vested solely in the board of directors under the by-laws. The discharge of Blair was not therefore effected until the board of directors took action on the date hereinbefore indicated which was subsequent to the declaration of the dividend in question.

The acts of a de facto officer of a corporation are binding upon the corporation and its stockholders where the same act, if performed by a de jure officer, is authorized by the by-laws of the corporation. 19 C. J. S. 78, §739; Ellis v. North Carolina Institution, etc., 68 N. C. 423.

The foregoing by-law validly confers the power to declare a dividend under certain conditions upon the secretary-treasurer. 18 C. J. S. §463, p. 1104;

Maloney, Collector of Internal Revenue, v. Western Cooperage Co., 103 Fed. 2d 992; Brown v. Luce Mfg. Co. et al., 231 Mo. App. 259, 96 S. W. 2d 1098.

Blair, as secretary-treasurer de facto, had authority to declare a dividend. He did declare a dividend in this case for $60,000. The record discloses that there was a surplus in excess of the amount of the dividend declared, and the dividend declared was within the existing net surplus and also valid as to amount.

As to defendant A. (Ann) Yates, her motion for judgment in her favor at the close of all the evidence should have been sustained. She did not claim any interest in the stock or the money of the corporation. She never had the possession of any of it. All she appears to have done in connection with the matter was to sign the checks with which the bonds were purchased. She was only a bookkeeper, and what she did in this connection she did at the direction of the manager.

The judgment dismissing the cross-petition of defendant Blair is reversed, with directions to vacate the order of dismissal and to enter judgment thereon for the dividend declared, together with interest from March 30, 1945, and to apportion said judgment between the stockholders as of that date as their interest appears.

ARNOLD, V. C. J., and WELCH, CORN, GIBSON, and O'NEAL, JJ., concur. DAVISON, C. J., and LUTTRELL and HALLEY, JJ., dissent.