### LOUISIANA PURCHASE EXPOSITION COMPANY, Appellant, v. LUKE M. EMERSON, Respondent.

St. Louis Court of Appeals, June 14, 1910.

1. **CORPORATIONS: Action on Stock Subscription: Jury Question.** In an action on a subscription to stock, claimed to have been made by defendant through an agent, whether defendant subscribed for the stock *held* a jury question.

2. **———: ———: Evidence: Newspaper Article: Hearsay: Prejudicial Error.** In an action for the price of stock claimed to have been subscribed in an exposition company by defendant through an agent, an article published in a newspaper stating that defendant subscribed a certain sum to the exposition, and quoting a letter written by him to the paper about the exposition, but which did not mention any subscription, was not admissible to prove a subscription or defendant's assent thereto, though he read the article and did not deny it. Said article should have been excluded as hearsay; and the error in admitting it was prejudicial to defendant, the competent evidence not conclusively showing a subscription by him.

Appeal from Pike Circuit Court.—*Hon. David H. Eby,*
Judge.

AFFIRMED AND REMANDED.

*Franklin Ferris, L. L. Leonard, J. C. Dempsey, Tapley & Fitzgerrell* for appellant.

(1) An appellant from an order granting a new trial, is required to show in the first instance error only as to the grounds therefor as set out in the ruling of the trial court, the burden being on the respondent to show that the new trial should have been awarded on the other grounds, set out in his motion. Millar v. Car Co., 130 Mo. 523; Candee v. Railroad, 130 Mo. 154; Hoven v. Railroad, 155 Mo. 224; Owens v. Railroad, 110 Mo. App. 320. (2) An objection to the introduction of evidence must be specific and the grounds upon which it is based must be stated when such objection is made, else such objection is ineffective. An objection cannot be held good on any grounds other than those expressed at the time the objection was made. An objection merely that certain evidence would be "incompetent, irrelevant and immaterial," is no objection at all in the eyes of the court. Glenville v. Railroad, 51 Mo. App. 631; McCortney v. Shepard, 21 Mo. 577; Schmucker v. Spelbrink, 25 Mo. App. 357; St. L. A. & M. Assn. v. Delano, 37 Mo. App. 294. (3) Where evidence, improper in itself, is merely cumulative to proper evidence of the fact, its admission does not constitute prejudicial error, and cannot be made the ground for a new trial. Sec. 659, R. S. 1899; O'Keefe v. Railroad, 124 Mo. App. 624; Sprague v. Sea, 152 Mo. 333; Young v. Hudson, 99 Mo. 106; Cherry v. Railroad, 61 Mo. App. 316. (4) A statement by another, if made by authority of one of the parties or subsequently ratified by him, and constituting an admission against interest, is admissible in evidence. Peck v. Ritchey, 66 Mo. 115; Gunning Adv. Co. v. Wanamaker & Brown, 115 Mo. App. 279; Pub. Co. v. Warehouse Co., 123 Mo. App. 17; Railroad v. Cowell, 28 Pa. St. Rep. 329; Bryce v. Clark, 42 N. Y. St. 471; 1 Clark & Skyler on Agency, sec. 141; 1 Am. and Eng. Ency., p. 1203. (5) Error must be preju-

dicial to constitute reversible error or to justify the granting of a new trial. Sec. 659, R. S. Mo. 1899; Berkson v. Railroad, 144 Mo. 216; Litton v. Railroad, 111 Mo. App. 151; Edmunston v. Jones, 96 App. 92; Hannon v. Transit Co., 102 Mo. App. 223. (6) Where, upon the whole record, it is clearly manifest that the judgment is for the right party, it will not be reversed, nor will a new trial be granted, although error was committed at the trial. Sec. 865, R. S. Mo. 1899; Barkley v. Cemetery Assn., 153 Mo. 317; Cass Co. v. Ins. Co., 188 Mo. 17; Atkin Bros. v. Grain Co., 130 Mo. App. 547; Harrison v. Bowen. 200 Mo. 219.

*R. L. Motley, Pearson & Pearson* for respondent.

GOODE, J.—Appeal from an order sustaining a motion for new trial. The petition is in three counts, of which the first asked judgment for five hundred dollars as the price of fifty shares of the par value of ten dollars each, of the capital stock of the Louisiana Purchase Exposition Company, alleged to have been subscribed by defendant, the second for two thousand dollars as the purchase price of two hundred shares, and the third was a variation of the second count and declared on the same subject-matter. The action on the last count was dismissed at the trial and nothing need be said about it. The main defense was defendant did not subscribe for stock, and in an answer under oath, he denied he signed either of the alleged contracts of subscription. Strong evidence was introduced that he did subscribe, and indeed we are asked to say the evidence was conclusive upon this issue and hence the supposed error for which the court granted the new trial was, in any event, harmless. Although defendant did not go on the witness stand to testify regarding his alleged subscription, the entire evidence bearing on the issue required a finding by the jury; that is to say, was of such a character the jury might have drawn an in-

ference defendant did not subscribe for the two hundred
shares, the price of which was sued for in the second
count. And it should be stated just here, the order for
new trial went only to that count, and the verdict on
the first count was retained. Letters signed by defend-
ant were put in evidence, conducing to show, in some
interpretations of their contents, defendant subscribed;
but conducing likewise to prove the contrary. Other-
wise stated, the contents of the letters are ambiguous
and would support opposite inferences. In one of the
letters defendant mentioned a conversation he had had
with the president of the Louisiana Purchase Exposi-
tion wherein said official asked defendant if he wished
to subscribe for stock, and defendant answered he did
not; whereupon the president of the Exposition Com-
pany said he had thought defendant did not wish to
subscribe. Another letter addressed to the president al-
luded to the same conversation and purported to quote
the words of it. That letter denied the alleged subscrip-
tion. Defendant wrote that no one had asked him to sign
any blanks (*i. e.,* blanks for subscription for stock) and
he did not sign any and had heard nothing about the mat-
ter until the fair was over; saying further "you (mean-
ing the president of the exposition) certainly remember
the understanding and the final talk we had in regard to
this matter in the door of your commission house; it is
plain as broad daylight to me." The evidence shows the
signature of defendant relied on as a subscription for the
stock mentioned in the first count of the petition, was
at the foot of a subscription paper; that the signature
of defendant relied on as a subscription for the stock
mentioned in the second count was appended to a letter
dated April 24, 1899, and was appended thereto by a
man named Crooks as agent or secretary of defendant.
In this letter defendant appeared to say he would take
two thousand dollars worth more of shares and asked for
blanks. It was admitted at the trial defendant's signa-
ture to the subscription paper was genuine, but the like

admission was not made as regards his signature to the letter wherein defendant appeared to say he would take two thousand dollars worth more of shares. Testimony was introduced to prove the scope of the agency of Crooks or his authority to act for defendant in the matter. Our conclusion is, as said, it was for the jury to determine whether or not defendant subscribed for the stock referred to in the second count. During the trial plaintiff offered and the court received in evidence against an objection to its competency, an article published May 5, 1899, in the *Calumet Banner*, a newspaper issued at Clarksville, Missouri. This article said defendant's "subscription of twenty-five hundred dollars to the World's Fair enterprise, is probably the largest individual subscription outside the city of St. Louis;" and then proceeded to quote a letter written by defendant to the paper about the fair. The letter said nothing about his subscription but eulogized the enterprise and predicted it would be a great success and the shares would pay a large premium; probably not less than five hundred per cent. The letter mentioned other World's Fairs or expositions and the success which had attended them, and then stated, in a boastful strain, matters relating to defendant's business as an importer of mules and jacks. After quoting that letter, the article quoted from the St. Louis *Republic* a letter written by the president of the Exposition Company to defendant. The original of this letter was put in evidence, but the original of the letter written by defendant to the newspaper was not put in evidence. After verdict the motion for new trial was sustained as to the second count for "errors in admitting incompetent evidence over the objection of the other side, to-wit, the publication appearing in the newspaper, the *Calumet Banner*, offered and read in evidence by the plaintiff in the case, over the objection of the defendant, that that portion which purported to be a copy of, or based upon a communication from the defendant in the case was not the original evidence and

was not the best evidence, and the absence of the original was not sufficiently accounted for to authorize the introduction of secondary evidence over the objection of the other side." Several reasons are assigned by plaintiff why the reason given by the court in his order for new trial did not constitute sufficient cause for the order. In the first place it is said the newspaper article was competent evidence because it tended to prove defendant had ratified the subscription for twenty-five hundred dollars worth of stock, if he did not make it in the first place, and tended further to prove he had made it. This argument proceeds on the theory that as defendant read the article in the *Banner* which said he subscribed for twenty-five hundred dollars worth of stock and did not deny or repudiate the statement, the article was relevant evidence to prove he had subscribed for stock or had assented to a subscription in his name, to the amount mentioned. We reject this contention and hold the article was incompetent. It was not competent unless the Exposition Company could have made out a case against defendant for the price of the stock merely because he did not repudiate a newspaper article which said he had subscribed. A contract of subscription between the Exposition Company and defendant would have to be established to lay him liable; and certainly the Exposition Company could claim no such contract from the bare fact that a newspaper had so stated and defendant had not denied the statement. The cases cited on this point by plaintiff are not at all apposite and relate to the failure of defendants who were sued on obligations, to deny they had authorized a certain act which would lay them liable when the act was charged to be theirs by the persons seeking to hold them liable; that is to say, defendants were sued as having authorized some act, either in person or by agent, and the method of proving the act had been authorized was to show the defendants had been notified of it by the parties dealt with who had relied on it as authorized,

and the defendants had remained silent after receiving the notice. [Peck v. Ritchey, 66 Mo. 115; St. L. Gunning Adv. Co. v. Wanamaker, 115 Mo. App. 280, 90 S. W. 737; Publishing Co. v. Warehouse Co., 123 Mo. App. 13, 99 S. W. 765.] It is manifest those cases lend no support to the proposition that a man will become liable as a subscriber for corporate stock if some newspaper represents he had subscribed and he does not come forward in denial of the statement.

It is further said the court held the newspaper publication had been admitted improperly simply because it repeated a letter written by defendant to the newspaper, whereas the letter itself should have been introduced, or a basis laid for secondary evidence of the contents by proving the original was lost. The court spoke of the publication as being incompetent on that ground, but held the whole article incompetent. Moreover, it is apparent that not only the part which recited the letter, but the part which said defendant had subscribed for twenty-five hundred dollars worth of stock, was incompetent, and should have been excluded as hearsay.

The last proposition is that, if competent, the publication was harmless in view of the strong evidence tending to prove defendant had subscribed. The newspaper article was prejudicial in tendency and apt to tell with the jury against defendant. If it conclusively appeared from other evidence the defense was not well taken, we would say a new trial ought not to have been granted because of the admission of the article; but, as said supra, although the evidence was cogent against defendant, we do not deem it conclusive, and think its force was augmented by the admission of an item of incompetent evidence.

The order for new trial will be sustained and the cause remanded. *Nortoni, J.,* concurs; *Reynolds, P. J.,* not sitting.