SPRINGFIELD GAS AND ELECTRIC COMPANY, a Corporation, Appellant, v. MRS. ANNA L. GRAVES ET AL., Respondents, No. 40707—221 S. W. (2d) 197.

Court en Banc, May 9, 1949.

Rehearing Denied, June 13, 1949.

*A. P. Stone, Jr.,* and *Wm. C. Cockrill* for appellant; *Stone & Smith* of counsel.

184

*Sam M. Wear, Wm. A. Wear, Arch A. Johnson* and *W. D. Tatlow* for respondents.

LEEDY, J.—This is a proceeding under ·the Declaratory Judgment Act in which is sought a determination as to the amount per share the holders of the preferred stock of plaintiff-appellant corporation are entitled to receive upon dissolution, liquidation, or winding up effected in the manner and under the circumstances here involved. The named defendants are the owners of 1226 shares of such stock, and they were sued individually as well as a class representing the holders of all of the preferred stock (11,286 shares). Plaintiff-appellant contended in the trial court, and urges here that the dissolution provisions of its charter govern the matter, under which it is conceded the limit of liability is $100.00 per share. Defendants-respondents say they are entitled to a premium of at least $15.00 per share, plus interest, and the trial court so found. Its judgment and decree was entered accordingly, and plaintiff appealed. The amount in controversy gives this court jurisdiction.

The facts are stipulated. Prior to March 26, 1945, plaintiff-appellant (hereinafter referred to as Springfield Company) owned and operated public utility properties in the City of Springfield (hereinafter referred to as City), consisting of an electric generating plant and distribution system, a gas distribution system, a steam heating system, and a bus transportation system. Springfield Company was an operating company, and a subsidiary in the Cities Service Power & Light Company holding company system. Federal Light & Traction Company (hereinafter referred to as Federal), a holding company, was also a subsidiary of, and controlled by Cities Service Power & Light Company, Federal owned all of the common stock of Spring-

field· Company. Both Federal and Cities Service Power & Light Company were registered holding companies under the Public Utility Holding Company Act of 1935. 15 U. S. C. A., § 79.

On August 17, 1943, in a proceeding pending before the Securities and Exchange Commission (entitled ''In the Matter of Cities Service Power & Light Company and its Subsidiary Companies, Respondents'') to bring about compliance with the provisions of § 11 (b) (1) of the Public Utility Holding Company Act [limiting operations of public utility holding companies engaged in interstate commerce to a single integrated public utility system], Securities and Exchange Commission (hereinafter referred to as SEC) ordered, among other things: ''It Is Ordered that Federal Light & Traction Company shall sever its relationship with the companies named hereafter by disposing or causing the disposition, in any appropriate manner not in contravention of the applicable provisions of the said Act or the Rules and Regulations promulgated thereunder, of its direct and indirect ownership, control, and holding of securities issued and properties owned, controlled, or operated by the following companies: Springfield Gas and Electric Company (and other companies named).'' In its finding and opinion handed down with the foregoing order, SEC further stated: ''Sale is only one of the many means of divestiture which may be used in compliance with orders of disposition.'' By appropriate order of SEC, Federal was granted an additional period of one year from August 17, 1944, within which to comply with the order of August 17, 1943. Thereafter, and on September 14, 1944, City and Federal entered into a written contract whereby City agreed to purchase (subject to certain conditions) Springfield Company with its properties as existing on July 31, 1944, for the sum of $6,750,000, for which City agreed to issue revenue bonds. The contract provided (among other things) that on the date of closing, Springfield Company would be the sole and exclusive owner, in fee simple, free and clear of all claims, liens, incumbrances and indebtedness, except its bonds in the amount of $4,014,000, of all the property so to be acquired by City, and that at the time of closing all of the 50,000 shares of common stock of Springfield Company would be· delivered, together with the resignations of all officers and directors of Springfield Company.

It transpired that March 26, 1945, became the closing date contemplated by the contract, at which time the purchase of the properties in question was consummated. Accordingly, all of the 50,000 shares of the common stock of Springfield Company were assigned, transferred and delivered to City, and at the same time Federal executed and delivered to City a bill of sale conveying said common stock. Whereupon, said 50,000 shares of common stock were reissued to City, and a stock certificate for such common stock was issued by Springfield Company and delivered to City immediately. It is con-

ceded that such sale by Federal was in order to enable it to comply with the August 17, 1943, order of SEC.

On March 26, 1945, a special meeting of the Board of Directors of Springfield Company· was held, at which the directors ·resigned, and a new board and a new set of officers (both consisting of city ·officials) were elected. Under the ordinance authorizing the issuance of $6,750,000 of revenue bonds for the purchase of the properties in question, it was provided that City would ''immediately upon the delivery of the stock of such Company [Springfield Company]·, and simultaneously therewith, cause said Company to be dissolved and all of its utility properties to be conveyed and transferred immediately to the City to be owned and operated exclusively by the City.'' See City of Springfield v. Monday, 353 Mo. 981, 987, 185 S. W. 2d 788, 789, in which was entered a pro forma decree authorizing the issuance, and declaring the validity of the revenue bonds just mentioned.

In conformity with the ordinance, City on March 26, 1945, caused appropriate steps to be taken toward voluntary dissolution of Springfield Company, which resulted in the execution and subsequent filing in the office of the Secretary of State, and in the office of the Recorder of Deeds of Greene County, of ''Articles of Dissolution by Voluntary Action . . . of Springfield Gas and Electric Company.'' However, Articles of Liquidation have not been filed with the Secretary of State and no certificate of dissolution has been issued by the Secretary of State. In connection with such steps, a final liquidating dividend of $100 per share on the preferred stock was declared (as provided by the charter). Provision was also made for retiring or redeeming the $4,014,000 of outstanding bonds at 102 and accrued interest.

On the same day, an escrow agreement and receipt were entered into between Federal, Springfield Company, City, and First National Bank of Kansas City (the latter as escrow agent), whereby Federal agreed to and did deposit with the escrow agent the sum of $169,290, an amount sufficient to pay the premium of $15.00 per share upon the 11,286 shares of preferred stock, the same to be held in escrow, and to be paid to those determined by a court of competent jurisdiction to be entitled thereto. The fund is now so held. Pending the determination of that question, the preferred stockholders have surrendered their certificates and received the liquidating dividend of $100 per share without prejudice to their right to claim the premium herein sought.

The institution of the present action was specifically authorized by resolution of the Board of Directors adopted at a special meeting held April 7, 1945, reciting that it had elected to dissolve voluntarily and wind up its affairs, and that certain owners and holders of the company's preferred stock claimed they were entitled to receive $115 per share for each share of said preferred stock, and that it appeared

advisable and necessary to secure an adjudication by a court of competent jurisdiction as to the rights of such owners.

No declaration or application for approval of the contract between Federal and the City, dated September 14, 1944, or for approval of the proposed sale of the common stock of the Springfield Company thereunder, was filed with SEC at any time, no such declaration or application for approval being necessary by reason of the exemption granted by Rule U-44(b) (3) of the General Rules and Regulations of SEC.

The dissolution provisions of the charter of Springfield Company provide that: "In the event of the dissolution, liquidation or winding up of the corporation, whether voluntary or involuntary, the holders of the Preferred Stock shall be entitled to be paid One Hundred Dollars ($100.00) per share, together with an amount equal to all dividends accrued thereon or in arrears (but without interest), before any amount shall be paid to the holders of the Common Stock and the holders of the Preferred Stock shall be entitled to no further payments or distribution. After such payment on the Preferred Stock the remaining assets shall be distributed pro rata among the holders of the Common Stock."

The "call" provision of the same instrument in relation to the preferred stock reads as follows: "At any time and from time to time, at the opinion of the Board of Directors, the Preferred Stock may be redeemed in whole or in part, on any date fixed for the payment of dividends on the Preferred Stock at the redemption price of One Hundred and Fifteen Dollars ($115.00) for each share of Preferred Stock redeemed (unless a less amount shall be specified in the certificate evidencing any shares of said stock as hereinafter provided) together with the amount, if any, by which Seven Dollars ($7.00) per annum (or such less rate of dividend as shall be specified in the certificate evidencing any shares of said stock as hereinafter provided) upon each such share from the date after which dividends thereon became cumulative to the date fixed for redemption exceeds dividends actually paid thereon from such date to the date of redemption." This provision was invoked by defendants' answer and counterclaim, but it has been abandoned on appeal as a theory of recovery.

Each preferred stock certificate carried on its face the following statement: "At any time and from time to time at the option of the Board of Directors of the Company, the Preferred Stock, Series A, of the Company is redeemable in whole or in part on any dividend payment date at One Hundred and Fifteen Dollars ($115.00) per share, plus accrued and unpaid dividends thereon. A statement from the Articles of Agreement of the Company in regard to the preferences, rights, limitations, privileges and restrictions of the Preferred Stock and Common Stock of the Company is printed on the back

hereof and made a part hereof. The holder hereof hereby consents and agrees to be bound by said statement and by all of the provisions of the Articles of Agreement of the Company and any and all amendments thereto.'' On the back of each such preferred stock certificate appeared a ''Statement from the Articles of Agreement of the Company in regard to the preferences, rights, limitations, privileges and restrictions of the Preferred Stock and Common Stock of Springfield Gas and Electric Company''; and all of the provisions of the Articles of Agreement hereinbefore quoted were quoted in full in said ''Statement'' on the back of each such preferred stock certificate.

Defendants' chief reliance is upon the contract of September 14, 1944, between Federal and City (herein referred to as Exhibit B); and particularly the second paragraph thereof. That contract recites:

''Whereas the City has offered to Federal the sum of Six Million Seven Hundred Fifty Thousand Dollars ($6,750,000) for the Springfield Gas and Electric Company, a Missouri corporation, with its properties as existing on July 31, 1944; and

''Whereas Federal has accepted said offer; and

''Whereas, it is desired to provide for the conditions which may arise pending the completion of such purchase and to make provision for the contingencies connected with said offer;''

The second paragraph reads as follows:

''. . . At the time of closing there shall be deducted from such purchase price of $6,750,000 an amount equal to the preferred stock then outstanding and the first mortgage bonds then outstanding at the par or principal amounts thereof, respectively, together with the applicable additional call prices unless prior thereto an order shall have been made by a competent authority permitting or requiring redemption of such securities or a part thereof without the payment of a premium, in which latter case the deduction shall be in an amount in accordance with such order. There shall also be deducted from such purchase price all other items of expense incident to calling and retiring such preferred stock and such first mortgage bonds, including all accrued dividends and interest, cost of publishing any call notices that may be required and trustees' fees.''

Other facts, if deemed pertinent, will be stated in the course of the opinion in connection with the points to which they relate.

 Defendants contend that they have two separate, distinct and consistent causes of action entitling them to the $15.00 premium: One a federal cause of action based on the Public Utility Holding Company Act of 1935 and Exhibit B (the contract between Federal and City dated September 14, 1944), and the other a state cause of action based on the provisions of the second paragraph of Exhibit B as made for their use and benefit. The following cases are cited in support of the first proposition: Otis & Co. v. SEC, 323 U. S. 624, 89 L. Ed. 528, 65 S. Ct. 483, and North American Co. v. SEC, 327 U. S. 686,

90 L. Ed. 945. The Otis case (mainly relied on) involved the review of a plan for liquidation and dissolution of a holding company ordered by SEC under § 11 (b) (2) of the Holding Company Act, wherein the enforcing court approved the plan and the Circuit Court of Appeals affirmed. The Supreme Court granted certiorari and the question presented was whether in such a liquidation, the participation by junior security holders in the assets was permissible before preferred security holders had received the entire liquidating preference secured to them by the company's charter. It was held that a provision of the corporate charter granting the preferred stock specified preferences upon liquidation, adopted six years prior to the enactment of the Public Utility Holding Company Act of 1935, was inoperative in the simplification (of a holding company system) by liquidation under § 11 (b) (2) of. the Act. The North American case likewise involved the review of orders of SEC, which limited North American's properties to those which, in the Commission's judgment, complied with the standards of § 11 (b) (1), and compelled it to sever relationships with all its other properties. Defendants emphasize the following from the opinion (l. c. 709): ''The Act does not contemplate or require the dumping or forced liquidation of securities on the market for cash. Under §§ 11 (d) and 11 (e) of the Act, any divestment or reorganization plan must meet the standards of fairness and equitableness. . . . Any plan of divestment or reorganization, moreover, must be carefully scrutinized by both the Commission and the enforcing court, thus enabling the assertion and protection of all shareholders' rights. See Otis & Co. v. Securities & Exchange Commission, 323 U. S. 624.''

Defendants urge that, under these cases, the sale of the stock as a step to enable City to acquire the properties and assets of Springfield Company is governed and controlled by the Federal Act. We do not agree. The circumstance that Federal was enabled to comply with SEC's order by selling the stock to City (instead of pursuing other permissible means of divesture) is not sufficient to bring the case within the Federal Act. For aught that appears, no objection or complaint was made concerning SEC's order for divestment by Federal of its holdings in Springfield Company, which is as far as that order goes. So the case, unlike those relied on, does not involve the review of a plan of liquidation of a holding company; nor the review of a plan of divestment of securities held by such a company. Moreover, under the stipulated facts, SEC had no jurisdiction to pass on a declaration or application for approval of the contract, Exhibit B, and none was ever filed with SEC because exempted under SEC's rules. Certainly it cannot be thought that the trial court, or this court on appeal, is vested with the same authority and discretion in this type of case as SEC would have in a proceeding properly before it under the Holding Company Act. We think the cited cases are

without application in the case at bar, and that there is no question of a federal cause of action here involved.

Turning now to the asserted state cause of action based on the provisions in the second paragraph of the contract, Exhibit B, as one made for the use and benefit of the preferred stockholders, it is defendants' position, which is argued with much vehemence, that the "second paragraph of the contract plainly, unequivocally, and without the slightest doubt as to its meaning, provides that the preferred stockholders on the closing date were to be paid $115 per share, 'unless prior thereto an order shall have been made by a competent authority permitting or requiring redemption of such securities or a part thereof without the payment of a premium;'" that Federal having failed to secure such order, "under the plain terms of the contract, the duty to pay the $115 per share by its express terms became unconditional, and with the identical legal effect as if no condition had been attached." A great many of the legal propositions urged in connection with this point will not require discussion because, in the view we take of the matter, the following will be assumed for present purposes: That Exhibit B, the contract, was admissible as against the objection that neither plaintiff nor defendants were parties thereto, and notwithstanding the further fact that neither of the parties to the contract, Federal and City, are parties to this action; that Springfield Company is bound by the contract the same as if it had signed it, because, having knowledge of the contract, it adopted and undertook to and did perform it, at least in part. So assuming, we think there are still insurmountable obstacles to the sanctioning of the recovery awarded by the trial court. Witness the language in question: "At the time of closing there shall be deducted from such purchase price of $6,750,000 an amount equal to the preferred stock . . . at the par or principal amounts thereof . . . together with the then applicable additional call prices, unless," etc. We are unable to read into the foregoing an obligation to pay *to the preferred stockholders* the amount so authorized to be withheld.

We agree with plaintiff that the contract does not, in terms, provide what disposition the City should or would make of the funds so deducted, nor for the payment of any specified sum per share *to the preferred stockholders*. As a matter of fact, under the stipulation, Springfield Company did on the closing date deposit with the dividend paying agent of its preferred stock the sum of $1,128,000 in special trust for the account of the holders of the preferred stock, that amount being $100 per share upon the outstanding shares. On the same day, $169,290 was deposited with First National Bank of Kansas City in escrow to provide a fund for the payment of a premium of $15.00 per share to the preferred stockholders "in the event that a court having jurisdiction shall make a final determination" to that effect. These actions ▉▉▉ were consistent with the declared

purpose of the contract, Exhibit B, namely, the "desire to provide for the conditions which may arise pending the completion of such purchase and to make provision for the contingencies connected with said offer." We think the parties to the contract had a right to protect themselves against the very contingency which arose, that is, the claim of certain preferred stockholders for the payment of a premium on their stock, and that the language employed is more consistent with this view than that asserted by defendants.

The judgment is reversed, and the cause remanded with directions to enter judgment for plaintiff as prayed. All concur.