St. Louis Southwestern Railway Company, a Corporation, Plaintiff-Respondent, v. Walter E. Meyer, Otto V. Christie, Arthur H. Cohen, A. Hicks Lawrence, Henry L. Moses, Charlotte T. Taussig, Harry E. Ward and Ruth M. Cook, individually and as class representatives of all of the holders of common stock of St. Louis Southwestern Railway Company, and Cullman Bros. Inc., a Corporation, Leo Wallerstein, Dorothy C. Wallerstein, Charles J. Liebman, Milton A. Holmes, Marianna W. T. Lawrence, Jacob I. Rosenbaum, John J. Kenney, Jean Schwedel, Byron J. Quinn, Alfred Hirschman, Margaret H. Liebman, Sherburne M. Earling, Louis H. Berk, Rena Gerson, Lionel C. Rosenbaum, Dora H. Rosenbaum, Ilse Blaugrund, Oliver Crist, Louise Burghardt, Lucien H. Hoch and David E. Rolf, Interveners, Defendants-Appellants, and R. Walston Chubb, Mabel Frank, Giboney Houck, as Executor of the Estate of Louis Houck, Deceased, Joseph Plassmeyer and Arpad Plesch, individually and as class representatives of all of the holders of common stock of St. Louis Southwestern Railway Company, and Nelson Cunliff, R. C. Day, C. F. G. Meyer, III, and Arnold G. Stifel, individually, and Southern Pacific Company, a Corporation, Gladys M. Albers, Marianne G. McDonough, Albert Oberfeld, David H. Kraft and Richard Heller, individually and as class representatives of all of the holders of preferred stock of St. Louis Southwestern Railway Company, and Samuel N. Koenigsberg, Saul Friedman and E. David Friedman, Executor of the Estate of Elisha M. Friedman, Interveners, Defendants-Respondents, No. 43998—272 S. W. (2d) 249.

Division Two, September 13, 1954.

Motion for Rehearing or to Transfer to Banc Overruled, November 8, 1954.

1058

*Walter E. Meyer* pro se and as attorney for other appellants; *Richard A. Holman* and *Jean Schwedel* on the brief; *Shepley, Kroeger, Fisse & Shepley* and *Roberts P. Elam* of counsel.

*John W. Murphy,* General Solicitor, St. Louis Southwestern Railway Company, and *Lackland H. Bloom* for plaintiff-respondent.

1062

*Coburn, Storckman & Croft* and *Mudge, Stern, Williams & Tucker* for respondents Southern Pacific Company, Albert Oberfeld and Marianne G. McDonough; *Paul D. Miller, Clem F. Storckman* and *Bernard Nemizow* of counsel.

1066

BARRETT, C.—This is an appeal from a judgment of the Circuit Court of the City of St. Louis sustaining the St. Louis Southwestern Railway Company's petition for interpleader. The petitioner, popularly known as the Cotton Belt, is a Missouri corporation, organized in 1891, with its principal office in the Cotton Belt Building in the City of St. Louis. The defendants sought to be interpleaded are the majority stockholders of the Cotton Belt's preferred and common stock. Briefly, the action originated in these circumstances: In November 1951, in addition to a dividend of five dollars per share on both the preferred and common stock, the board of directors declared a further dividend of $370,648, one dollar per share, on the outstanding shares of the capital stock of the company. By resolution of the board, however, payment of dividends was withheld because there was reasonable doubt, interpreting the articles of association, the stock certificates and the applicable Missouri statutes, as to the right of preferred stockholders to

participate in dividends after a payment in one year of a five dollar dividend on all classes of stock. In this connection the petition alleged that ''Certain defendants who are holders of preferred stock have asserted claims that the holders of preferred stock are entitled to participate in all dividends declared and paid by the plaintiff, at the same rate per share as the holders of common stock, after the holders of preferred stock and the holders of common stock shall have each received $5 per share in any year, and certain defendants who are holders of common stock have asserted claims that the holders of preferred stock are not entitled to any further dividends in any year after the holders of such preferred stock shall have received dividends at the rate of $5 per share in any year, and that ▓▓▓▓ after the holders of such preferred stock shall have received dividends at the rate of $5 per share in any year the holders of common stock are entitled to all further dividends declared or paid by the plaintiff in such year.'' It was alleged in the petition and set forth in the resolution, therefore, that payment of the dividends prior to a judicial determination of the respective rights of the common and preferred stockholders would expose the company to the hazard of double or multiple liability and a multiplicity of suits. Because of the claims and the hazards the board segregated and set apart from its cash assets the sum of $370,648 and directed its deposit in a special dividend fund in the Mercantile Trust Company for the benefit of shareholders. Pursuant to resolution this suit was instituted, and subsequently the $370,648 was paid into the registry of the court. The trial court sustained the petition for interpleader, discharged the railway company and ordered the common and preferred stockholders to interplead, individually and as class representatives, as to their respective rights to share in the dividend fund. Certain common stockholders have appealed from the judgment decreeing interpleader.

▓▓▓ The first general question for review, upon the appeal, is the trial court's jurisdiction of the subject matter and the persons of the appellants. In the petition for interpleader the residence of the defendant stockholders, preferred and common, was set forth and as to the nonresident defendants there was a request for and service of process by publication as provided by V.A.M.S., Sec. 506.160. In contending that the trial court did not have jurisdiction of the subject matter it is argued that in this proceeding in rem there was no res and, therefore, service by publication upon nonresident defendants was unauthorized and invalid. It is said, there being no res, that the appearance of other stockholders in the proceeding in rem did not confer jurisdiction. The basis of the argument is that the action of the board of directors in declaring the dividend and setting apart in a separate fund the sum of $370,648 from its cash

assets, now in the registry of the court, did not result in the creation of a res for which interpleader will lie nor a res within the jurisdiction of the court warranting service by publication. The declaration of a dividend creates a debt from the corporation to its stockholders, (McLaran v. Crescent Planing Mill Co., 117 Mo. App. 40, 93 S. W. 819) hence it is argued that the debt cannot be transformed into a trust fund for the benefit of stockholders without their consent. Nor, likewise, it is said, could the deposit of the money in a bank in St. Louis and subsequently into the registry of the court transform the debt into a res. In these circumstances it is urged that the court's exercise of jurisdiction over the subject matter of this action and over the persons of the nonresident stockholders constitutes a denial of due process. In this connection it is urged that a construction and application of Sec. 506.160, "in such a way as to justify service by publication in this action on the nonresident stockholders, inasmuch as the subject of the action is an intangible, would render such statute void and unconstitutional, in violation of the due process guaranteed by the Fourteenth Amendment of the Constitution of the United States and Section 10 of Article I of the Constitution of Missouri."

The Missouri statute relating to service by publication (V.A.M.S., Sec. 506.160) provides, in part, that "Service * * * by publication shall be allowed in all cases affecting *a fund,* will, trust estate, *specific property,* or any interest therein, or *any res* or status *within the jurisdiction of the court,* * * *.*" It may be that the sum of $370,648, set apart by resolution from the company's cash assets and deposited in the bank when the suit was instituted (and now deposited in the registry of the court), is not, strictly speaking, a 'trust. 3 Scott, Trusts, Sec. 531.1, pp. 2535-2537. But it was segregated and set apart, deposited, initially, in a "special dividend account in trust" (Springfield Gas & Electric Co. v. Graves, 359 Mo. 182, 193, 221 S. W. (2) 197, 199) in the Mercantile Trust Company in St. Louis, and it is, undeniably, a "fund," "specific property," or a "res" and, indisputably, ▇▇▇ was and is indeed, a tangible thing "within the jurisdiction of the court" now and when this proceeding was instituted and plainly, within the meaning of the statute, authorized service by publication upon nonresident defendants. Standard Oil Co. v. New Jersey, 341 U. S. 428, 71 S. Ct. 822, 95 L. Ed. 1078; Thompson v. Terminal Shares, 89 F. (2) 652; Franz v. Buder, 11 F. (2) 854; In re Interborough Consol. Corp., 267 Fed. 914; State ex rel. Reid v. Barrett, 234 Mo. App. 684, 118 S. W. (2) 33; Gassert v. Strong, 38 Mont. 18, 98 Pac. 497 (certiorari denied 215 U. S. 583, 30 S. Ct. 403, 54 L. Ed. 338); annotation 15 A.L.R. (2) 610.

Furthermore, in this connection, the Circuit Court of the City of St. Louis is a court of general jurisdiction (Const. Mo., Art. 5,

Secs. 1 & 11) with the power to entertain jurisdiction in this class of cases—interpleader actions. Davison v. Hough, 165 Mo. 561, 573, 65 S. W. 731, 733. The St. Louis Southwestern Railway Company is a Missouri corporation and the situs of its shares of stock is Missouri, and the right to dividends is appropriately defined by the laws of Missouri. Thompson v. Terminal Shares, supra; State ex rel. North American Co. v. Koerner, 357 Mo. 908, 211 S. W. (2) 698; Lich v. U. S. Rubber Co., 39 F. Supp. 675; 1 Beale, Conflict of Laws, Sec. 104.1, p. 446; Royal Arcanum v. Green, 237 U. S. 531, 35 S. Ct. 724, 59 L. Ed. 1089. In addition, this is a class action. V.A.M.S., Sec. 507.070. It was alleged in the petition for interpleader as to the named preferred and common stockholders that they were joined in the action ''individually * * * and as representatives of all of the holders of common stock (or preferred) as a class,'' there being 187 common shareholders and 82 preferred shareholders residing in more than twenty-five states and three foreign countries. The trial court found that the holders of 160,372 shares of common stock, representing 93.3 per cent of the total issued and outstanding common stock, and 98.4 per cent of the total issued and outstanding preferred stock, had been joined as defendants and duly served with process or permitted to intervene. The court specifically found that this was a proper class action, that the holders of common stock constitute a class and that the holders of preferred stock constitute a class, and that the class representatives were fairly chosen and fairly represented the classes. Sup. Ct. Rule 3.07 (c); Springfield Gas & Electric Co. v. Graves, supra.

Some of the defendants, Nelson Cunliff, R. C. Day, C. F. G. Meyer, III, Arnold Stifel, Mabel Frank and R. Walston Chubb, representing twenty-nine shares of common stock—excluding the five shares in Mr. Chubb's name—were personally served with process in the City of St. Louis. Joseph Plassmeyer, owner of 100 shares of common stock, was personally served with process in Osage County, Missouri, and the administrators of the Houck estate, owning five shares, were served with process in Cape Girardeau County. These individual defendants, served with process in Missouri, made no appearance and an interlocutory judgment in default was entered against them. Southern Pacific Company, the owner of 132,403 shares of common stock and 194,417 shares of preferred stock, was likewise served with process in Missouri. Southern Pacific Company filed an answer and statement of claim and specifically joined in the request that all parties defendant be required to interplead. Two individual owners of 1030 shares of preferred stock, residents of California, filed answers and statements of claim and joined in the request for interpleader. The executors of an estate in New York, owning 340 shares of common stock, voluntarily intervened in the suit, filed an answer and claim and made no objection to the court's

jurisdiction and have not appealed from the trial court's judgment. The notice of appeal lists thirty appellants but only Mr. Meyer, claiming ownership of 14,850 shares of common stock, timely and properly objected to the court's jurisdiction and Mr. Meyer represents and filed answers and claims for several of the listed appellants. The appellants in their argument admit that this is a proceeding in rem, "this action being in rem and there being no res, service by publication upon defendants, nonresident stockholders, was invalid." And, no personal or general judgment was sought or entered against any defendant or appellant, and in this respect the case is plainly distinguishable from the cases relied upon by the appellants, New York Life Ins. Co. v. Dunlevy, 241 U. S. 518, 36 S. Ct. 613, 60 L. Ed. 1140; Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565; His Majesty's Treasury v. Bankers Trust Co., 304 N. Y. 282, 107 N. E. (2) 448. In short, in the briefly noted circumstances of this record, service by publication against nonresidents was authorized (V.A.M.S., Sec. 506.160), the court had jurisdiction of the subject matter of the action and of the persons of the parties and there was in no respect a denial of due process. Standard Oil Co. v. New Jersey, supra; Pennoyer v. Neff, supra.

 The second general question for review is the propriety of the court's action, upon this record, in decreeing interpleader. In their answers the appellants alleged as defenses to the granting of interpleader that the railroad was not an impartial stakeholder, that the plaintiff railroad colluded with Southern Pacific Company in instituting this action, had not tendered the entire amount due stockholders as dividends, that there was no exposure to adverse claims or multiple liability and that if there was such exposure it was created and caused by the plaintiff. It was also alleged that the petitioner had not come into equity with clean hands and was guilty of estoppel and laches. It is urged by the appellants, upon this record and the proof adduced in support of their defenses, that the court in decreeing interpleader disregarded their proof and all the applicable equitable principles and therefore the judgment should be reversed.

In part the appellants' arguments misconceive the nature of modern interpleader and the changes wrought by our enactment and recent adoption in Section 507.060 of Federal Rule 22. Since the questions upon this appeal arise upon the record and the proof adduced, and not the pleadings, it is not necessary to consider, precisely, the nature and characteristics of interpleader under the statute or to attempt specific delimitation. It is sufficient for the purposes of this opinion to note that certain technical requirements, previously enforced, have been abolished and the scope of interpleader, both in form and substance, broadened. Plaza Express Co. v. Galloway, (Mo.) (No. 43,939); Heinrich v. South Side Natl. Bank, 363 Mo. 220, 250 S. W. (2) 345; Barr v. Snyder, 358 Mo. 1189, 219

S. W. (2) 305; Moore & Co., Inc. v. J. S. McConkey, 240 Mo. App. 198, 203 S. W. (2) 512; Chafee, "Modernizing Interpleader," 30 Yale L. J. 814. See particularly: 74th Cong. 1st Sess. S. Rept. 583; 73d Cong. 2nd Sess. S. Rept. 1517. In this connection, after a prolonged "interim trial conference," the trial court ruled that the issues to be tried on the first stage of the action were, one, whether or not plaintiff on November 26, 1951, had in its possession a dividend trust fund, two, whether any person had or reasonably could be expected to make claims to said fund and, three, whether plaintiff was exposed to double or multiple liability with respect to the fund within the meaning of Section 507.060. The appellants, particularly Mr. Meyer, repeatedly refused to try the entire cause and as to their equitable defenses the trial court ruled that upon the trial of the first stage of the proceeding evidence bearing upon the right to maintain interpleader would be admitted, but the court expressly ruled that evidence relating to the respective rights of the parties to the fund or to the merits of the controversy between the preferred and common shareholders would not be considered. As to their equitable defenses the appellants now claim that the trial court erroneously excluded certain evidence, but the evidence has been preserved and in so far as it is admissible and meets the requirements of relevancy, materiality and probative force will be considered upon this appeal. V.A.M.S., Sec. 510.310.

 In urging that interpleader was improperly decreed in this case it is first said that the trial court disregarded certain broad equitable principles applicable to interpleader. As demonstrating a violation of these principles it is argued that the railroad failed [255] to turn into court the entire amount due stockholders as dividends, colluded with Southern Pacific Company, a claimant, in instituting this action and is not in a position to be and in this suit has not been a fair and impartial stakeholder for the reason that the Cotton Belt is controlled by Southern Pacific Company.

As proof of control the appellants rely upon the fact that Southern Pacific owns 194,597 shares out of a total of 198,837 shares of preferred stock and 133,107 shares out of a total of 171,811 shares of common stock of St. Louis Southwestern, or, approximately, 88% of the total stock outstanding. Seven of the nine members of the board of directors of the Cotton Belt are officials of the Southern Pacific Company. The net income and other statistical data concerning the railroad is analyzed and the conclusion drawn by the appellants that the Cotton Belt has been operated in accordance with Southern Pacific's stockholdings and interests. It is not necessary to attempt an analysis of the statistical data or to examine the validity of the appellants' conclusions, it is sufficient for immediate purposes to say that they do not show that the Cotton Belt is not an impartial stakeholder. Southern Pacific's control of the St. Louis Southwestern

Railway Company was authorized by the Interstate Commerce Commission in 1932 (St. Louis Southwestern Railway Company Control, 180 I.C.C. 175) and it is difficult to conceive how any unfavorable inference can now be drawn from the fact in this proceeding. Mr. Meyer participated in that hearing as he did in the reorganization case and many of the matters urged here were considered in those cases, inferentially if not directly. St. Louis Southwestern Ry. Co. Reorganization, 249 I.C.C. 5—see particularly l.c. 76; In re St. Louis Southwestern Ry. Co., 53 F. Supp. 914; St. Louis Southwestern Ry. Co. v. Henwood, 157 F. (2) 337. We need not say whether the plaintiff in interpleader must be free from bias and have no preference or personal interest whatever in the subject matter or the outcome of the litigation (Standard Surety & Casualty Co. v. Baker, 105 F. (2) 578, 580), but the mere fact that its counsel expressed an opinion that preferred stock was entitled to participating rights does not prove that the plaintiff stakeholder has such a financial or other disqualifying interest in the matter that it is not entitled for that reason to maintain an interpleader action. Compare Heinrich v. South Side Natl. Bank, supra. Nor does the fact that the Cotton Belt moved and the court quashed certain subpoenas duces tecum or refused to produce documents, particularly correspondence and the opinions of lawyers as to the right of preferred stock to participate in dividends, show such a lack of impartiality on the part of the plaintiff as to deprive it of the status of stakeholder.

As proof of collusion the appellants point to Southern Pacific's control and the fact that eleven days prior to the institution of this suit Southern Pacific's counsel wrote a letter to Cotton Belt's counsel in which he took the position that preferred stock was entitled to participating rights. In these circumstances, this suit following immediately, it is said that collusion was shown. The appellants tacitly concede that their proof does not show that Southern Pacific's control was "sinister," nevertheless, they would draw the inference, upon this record, that it was of such character that it shows collusion and for that reason interpleader should be denied. The circumstances, however, do not show that Southern Pacific has, by reason of its majority in interest, through its ownership of 88% of all outstanding stock, improperly managed the Cotton Belt or dominated its board of directors. Merrill v. Davis, 359 Mo. 1191, 225 S. W. (2) 763; Tanner v. Lindell Railway Co., 180 Mo. 1, 79 S. W. 155. They certainly do not compel the inference of that "collusion," on the part of the Cotton Belt, defeating as a matter of law its right to maintain this action. Little v. St. Louis Union Tr. Co., 197 Mo. 281, 94 S. W. 890.

As proof of the claim that the Cotton Belt failed to pay into court the entire amount due stockholders as dividends the appellants analyze the company's earnings, as they do later in

connection with their claim that the railroad concealed facts from stockholders, and point to the fact that the company "was in a position to pay a very much larger dividend," so, it is said, the tendered dividend was only a small part of what was due stockholders from the company. But, without critical examination of the analyses, as it was with majority control so it was with the number and size of the dividends, their declaration was a matter within the discretion of the board of directors and it may not be said in this instance that there was such an abuse of discretion that interpleader will be denied. Niedringhaus v. William F. Niedringhaus. Inv. Co., 329 Mo. 84, 104-105, 46 S. W. (2) 828, 833; Woodruff v. Cole, 307 Mo. 19, 269 S. W. 599. Furthermore, interpleader may not be defeated initially by the mere assertion that a fund is larger in amount than tendered. Novinger Bank v. St. Louis Union Tr. Co., 196 Mo. App. 335, 344, 189 S. W. 826; 829.

 It is urged that there was no exposure to double or multiple liability within the meaning of V.A.M.S., Sec. 507.060, and if there was such exposure it was caused and brought about by the plaintiff's own conduct and therefore the trial court erroneously decreed interpleader. In contending that the plaintiff caused the exposure it is said that the railroad was the first to raise the question of the preferred stock's right to participation and that was in 1926, thirty-five years after the issuance of both the common and preferred stock and thereafter, 1926 to 1931, "the matter was the subject of discussion between insiders." Then, after a lapse of twenty years, the corporation, without warrant, mingled dividends on separate and distinct obligations to its preferred and common stockholders, purporting to create a trust fund, and "By these elaborations of its own doing it now claims that it is in danger of exposure and exposed to double or multiple liability." What we have said with reference to the company's declaration of the dividend and whether there was a "fund," "specific property" or a "res" within the jurisdiction of the court may, inferentially, dispose of this argument. But if it is not sufficient to dispose of the argument, the facts pointed to by the appellants do not demonstrate the occasioning of the hazard to multiple liability by the party's own conduct in violation of equitable principles so as to compel the denial of interpleader. Compare Calloway v. Miles, 30 F. (2) 14.

 The statute, Sec. 507.060, says: "Persons having *claims* against the plaintiff may be joined as defendants and required to interplead *when their claims are such that the plaintiff is or may be exposed to double or multiple liability.*" It is not necessary to elaborate upon the meaning of the statute, it may be noted, however, that the court has recently said that the language is so clear and unambiguous that it needs no interpretation. Plaza Express Co. Inc. v. Galloway, (Mo.) (No. 43,939). In that case, involving tort claims (73d Cong. 2nd

Sess. S. Rept. 1517, p. 4) the court did say that only two vital facts need appear in the statement of claim. "These are that persons have claims against plaintiffs, and that those claims are of such nature that plaintiffs may be exposed to 'double liability.' Obviously, 'double liability' means 'exposed to double recovery for a single liability.' The other pertinent parts of the statute eliminate the necessity for the existence of facts and conditions, the existence of which was formerly necessary to the maintenance of equitable interpleader or of bills in the nature of interpleader. Thus is eliminated the necessity that the same thing, debt, or duty be claimed by each of the parties against whom relief is sought. * * * So, also, it is not necessary that the claims of the parties be dependent or derived from a common source because the section specifically provides that the claims may be independent of one another and that they need not have a common origin."

But the appellants, to demonstrate that there was no exposure or danger of exposure to adverse claims or multiple liability, point to the fact that the board of directors declared a dividend of $370,-648, one dollar per share on the 198,837 shares of preferred stock and one dollar per share on the 171,811 shares of common stock, payable to the stockholders and, despite the carefully worded resolutions, "declared dividends on two separate obligations of the Company" and again urges "Thus no fund was created to which there could be adverse claims." Since the fund was sufficient in amount to satisfy the claims of both common and preferred stockholders to the declared dividend, it is said that there can be no adverse claims, that any claim which the respective classes' of stockholders might assert can be satisfied out of the tendered fund. The appellants, in this connection, say that "The common stockholders have made no claim to the alleged dividend declared on the preferred stock," and that the preferred stockholders have made no claim to the dividend on common stock. Furthermore, they state, "It is the position of the appellants that there is no reasonable doubt that the preferred stock is without participating rights and that the preferred stockholders are not entitled to the $1.00 dividend declared on the preferred stock," on the other hand, there can be no question that the common stockholders are entitled to the dividend on the common stock.

We are not concerned upon this appeal with the merits of the controversy but the question was first raised, officially and publicly, before the Interstate Commerce Commission, in the control case, and the Commission said, 180 I.C.C., l.c. 180, "There are some differences of opinion with respect to the relative rights of the two classes of stock, and until these uncertainties have been settled or adjudicated the relative valuation cannot be fixed." It is not necessary to detail, as this record does, the entire history of the company and the origin of the two classes of stock, or to set forth the provisions of the stock

certificates, the articles of incorporation and the Missouri statutes which give rise to the "differences of opinion" and involve the merits of the controversy between the common and preferred shareholders. The question was first raised with Mr. Meyer in 1926 in a hearing before the Interstate Commerce Commission. The written opinions of lawyers, from various sections of the country, on both sides of the question, throughout the years are set forth in the record. After this action was instituted six common shareholders with 2160 shares of stock instituted an action for a declaratory judgment against the Cotton Belt and Southern Pacific in New York in which they prayed a declaration that the preferred stock was not entitled to participate in dividends with the common stock. The New York court dismissed the action for lack of jurisdiction of the subject matter. In January 1952 another group of common stockholders brought an action in the New York courts in which they sought to enjoin the payment of dividends to preferred stockholders and that action was dismissed. In December 1951 Mr. Meyer instituted a class action in the United States District Court for the Eastern District of Missouri in which he too sought a declaratory judgment that the declaration of the one dollar dividend was void, that the preferred stockholders had no right to participate in dividends, and he asked that the company be permanently enjoined from paying such dividends. In a memorandum opinion Judge Hulen set forth the basic claims and the issues and declined jurisdiction. Judge Hulen referred to the pendency of this action and in declining jurisdiction said, "The issues in this case are such that a ruling by the state court under the circumstances is preferable to a ruling by this court. To proceed with this action would tend to multiply lawsuits, increase expense of litigation and prolong the ultimate determination of the question at issue. The cause started in the state court, it has jurisdiction, the parties can there secure a final and binding decision on their rights which they cannot do here." In addition to preferred stockholders claiming, through the years, that their stock was participating, they have filed answers and claims in this proceeding in which they vigorously assert the fact. The appellants, considering the respondents' argument, say: "Consider the result if either of the theoretical possibilities suggested by respondents should eventuate: If the preferred stockholders were successful, they would receive $1.86 per share. If the common stockholders were successful, they would receive $2.16 per share. Either happening would be in entire ▮▮▮ disregard of the resolution of the board of directors by which a dividend of $1.00 was declared on the preferred and a dividend of $1.00 on the common stock, and no more." There is no need to analyze or question these conclusions and, again, we are not concerned with the merits of the controversy. Further analysis of the vast details and demonstration is unnecessary, the noted circumstances illustrate that there is a multiplicity and diversity of

claims and of suits and they are adverse if not mutually exclusive. Standard Surety & Casualty Co. v. Baker, 105 F. (2) 578; Hunter v. Federal Life Ins. Co., 111 F. (2) 551; Perkins v. Benguet Consol. Mining Co., 55 Cal. A. (2) 720, 132 P. (2) 270; certiorari denied, 320 U. S. 803, 64 S. Ct. 429, 88 L. Ed. 485; Price v. Morning Star Mining Co., 83 Mo. App. 470; Granite Bituminous Pav. Co. v. Stange, 225 Mo. App. 401, 37 S. W (2) 469. Each claimant need not assert a right to the entire fund, there is a reasonable doubt upon a question of law if not of fact (Geitz v. Blank, (Mo. App.) 108 S. W. (2) 1066) and the claims expose the railroad to double vexation with respect to one liability or obligation (Barr v. Snyder, supra; Chafee, ''Modernizing Interpleader,'' 30 Yale L. J. 814), if not in some eventualities to a double recovery for a single liability. Plaza Express Co., Inc. v. Galloway, supra.

Finally, it is urged that the trial court erred in finding against the appellants as to their defenses of unclean hands, estoppel, and laches. The Cotton Belt was operated by a receiver from 1932 to July 1947, and it is said that the railroad and Southern Pacific could have sought and obtained an adjudication as to whether preferred stock was entitled to participation rights upon the railroad's emergence from receivership and the reorganization proceedings and therefore they have been guilty of laches. In this connection the railroad's net income from year to year, 1947-1951, is set forth and tables are presented purporting to demonstrate the annual per share earnings of the two classes of stock and finally the conclusion that greater dividends could have been declared in each year, thus presenting the merits of this controversy. But, as the appellants state, from 1947 to 1951 a substantial part of the Cotton Belt's earnings was expended on reduction of indebtedness and equipment and during those years no dividends, except 1951, were paid other than the five dollars per share which is not questioned here. There is no necessity in these circumstances to enter upon an extended discussion of the subject of laches. See: 2 Pomeroy, Equity Jurisprudence, Sec. 419; In re Estate of Thomson v. Thomson, 362 Mo. 1043, 1051, 246 S. W. (2) 791, 795. There is no showing, or for that matter a valid claim, that the failure to institute this action on some earlier date resulted in any inequity or inequality or disadvantageous change in the condition or relation of either the property or the parties and, in short, there is no occasion upon this record for the application of the equitable doctrine of laches. Ruckels v. Pryor, 351 Mo. 819, 174 S. W. (2) 185; Larson v. Crescent Planing Mill Co., (Mo. App.) 218 S. W. (2) 814.

The appellants in contending that the trial court erred in finding against them on their defense of unclean hands state that it is not essential to this defense that a fraud has been committed or that the party asserting the defense has been injured—it is all ''a question of moral intent.'' And so they tacitly concede that there was no

proof of fraud or of injury to the appellants. Their claim in this regard may be summarized by a quotation from their brief: "St. Louis Southwestern and Southern Pacific do not come into equity with clean hands inasmuch as they pursued a policy of concealment and misrepresentation in reporting to the Interstate Commerce Commission and the Securities and Exchange Commission, and in failing to inform investors' services, newspapers and the stockholders of St. Louis Southwestern, as to the contention and of their opinion that the preferred stock had participating rights."

The Cotton Belt was required to make certain reports to the Interstate Commerce Commission, particularly "Schedule 251 Form A" reports, and to the Securities and Exchange Commission. 49 U.S.C.A., Sec. 20; 15 U.S.C.A., Sec. 781. Vast quantities of these reports and letters concerning them were offered in evidence and particular emphasis is placed upon Cotton Belt's changes in some of the reports. The purpose of the evidence was to show that throughout the years the railroad, in making the reports to both the Interstate Commerce Commission and the Securities and Exchange Commission, concealed or failed to mention the fact that there was a question or claim that the preferred stock had participating rights, even though some of the reports called for this information. The reports are analyzed and discussed in detail and it is urged that they prove the claim of unclean hands and compel the denial of interpleader. Vast quantities of reports, clippings and data from the *New York Times, New York Herald Tribune, Wall Street Journal,* Moody's Investors Service, Standard & Poor's Corporation, *Commercial & Financial Chronicle,* to illustrate, were offered in evidence. The trial court excluded this evidence, and we think properly so because it was hearsay (Blake v. Meadows, 225 Mo. 1, 123 S. W. 868; Louisiana Purchase Exposition Co. v. Emerson, 149 Mo. App. 594, 129 S. W. 753), even though one gentleman made the extravagant claim that his institution was "a quasi-public corporation." As indicated, we nevertheless consider the evidence upon this appeal. V.A.M.S., Sec. 510.310(4). The purpose of this evidence was to show that these various organizations quoted or reported the price of Cotton Belt's stock, preferred and common, throughout the years, without knowing and reporting the claim that preferred stock was entitled to participation, that neither the Cotton Belt, its officials nor anyone connected with them corrected the reports or called attention to them, thereby misleading the public as well as purchasers and sellers of the company's stock. Aside from the lack of probative force of vast quantities of the proffered testimony and documents, they do not prove or establish the character of conduct condemned by the maxims of equity, or, unclean hands. Hyde Park Amusement Co. v. Mogler, 358 Mo. 336, 214 S. W. (2) 541; Shinsaku Nagano v. McGrath, 187 F. (2) 753; A. C. Frost & Co. v. Coeur D'Alene Mines Corp., 312 U. S. 38, 61 S. Ct. 414, 85 L. Ed. 500.

 Relying upon the alleged representations to the Interstate Commerce Commission and the Securities & Exchange Commission that the preferred stock had no participating rights, it is urged that the railroad and Southern Pacific are estopped from seeking the relief of interpleader. But these facts and circumstances, as they do not establish laches or unclean hands, do not establish that conduct calling for the application of the doctrine of estoppel with the consequent denial of the right to maintain an action of interpleader. A. C. Frost & Co. v. Coeur D' Alene Mines Corp., supra; Deitrick v. Greaney, 309 U. S. 190, 60 S. Ct. 480, 84 L. Ed. 694.

Upon this trial anew every question and issue has been fully considered and the trial court's findings and decree are supported by substantial evidence in every particular, even though we have not deemed it necessary to set forth all the vast details and demonstrate the fact other than by illustration, and, accordingly, the judgment is affirmed. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by *Barrett, C.,* is adopted as the opinion of the court.

*Leedy,* Acting P. J., and *Broaddus* and *Anderson,* Special Judges, concur.