R. L. BROWN, APPELLANT, v. LUCE MANUFACTURING CO. ET AL., RE-SPONDENTS.—96 S. W. (2d) 1098.

Kansas City Court of Appeals.   May 25, 1936.

*Harzfeld, Beach, Steeper & Gordon* for appellant.

*Bowersock, Fizzell & Rhodes* and *Ford R. Nelson* for respondents.

BLAND, J.—This is a suit to recover the amount of a dividend in the sum of $1630.89, alleged to have been declared by the defendant in favor of the plaintiff on its corporate stock.

The petition is in three counts. The case was tried by all parties as a suit in equity and resulted in a judgment in favor of defendant. Plaintiff has appealed.

The facts show that defendant, a corporation manufacturing luggage in Kansas City, desiring to employ a superintendent of its factory, sought out plaintiff in June, 1928, to engage his services in that capacity. Plaintiff at that time was employed in the city of Denver. After some negotiations the parties entered into a written contract on July 1, 1928, whereby plaintiff was employed by the defendant for a period of three years, ending on June 30, 1931. The contract provided for a salary of $6000 per year to be paid by the defendant to plaintiff and, further, for the sale by the defendant to plaintiff of 100 shares of its capital stock for the sum of $10,000. The purchase price of the stock was to be paid out of the dividends that might be declared on said stock during the period that plaintiff was employed, which employment was to include any renewals or extension of the time of the employment. When the total dividends declared were equal to the sum of $10,000 defendant agreed to assign and deliver to plaintiff a certificate for the said 100 shares of stock to be his absolute property. In the event that the contract of employment, or any extension thereof, should terminate, or plaintiff should cease to be employed by the defendant, prior to the time that the dividends so declared on said stock equalled the aggregate sum of $10,000, defendant agreed to pay to plaintiff, in cash, the amount of such dividends so declared during the period of such employment and, thereafter, plaintiff was to have no interest in the 100 shares of stock sold to him. Until said dividends declared aggregated the sum of $10,000 no stock was to be issued to plaintiff and he was not to have any right to vote the same.

It appears that the defendant corporation was a family affair organized in 1928, by Mrs. Luce and her two sons, Milton H. and Lorenzo Luce, who were its sole stockholders; that they also owned the capital stock of a corporation known as the Luce Trunk Company, the two companies being affiliated. These two corporations were considered as the private business of the stockholders and the latter conformed to only such laws and regulations relative to the corporation as was necessary to keep the charters thereof alive.

There was no formal meeting of the board of directors during the time that plaintiff was connected with the defendant and, of course, no minutes were kept of such meetings, but the affairs of the defendant were discussed informally between the stockholders occasionally, perhaps eight or twelve times per year. Lorenzo Luce was in active charge of the affairs of the defendant and Milton H. Luce had charge of the Luce Trunk Company. The mother does not seem to have taken any active part in the management of the concerns, although she held the position of secretary in the defendant corporation.

Lorenzo Luce died in August, 1932. Prior to that time he was president of defendant and Milton H. Luce was vice-president. During his lifetime Lorenzo Luce received a salary from the defendant. The other officers received none. Upon the death of his brother Milton H. Luce became president of the defendant. Plaintiff remained in the employ of the defendant until July 3, 1933, when he was discharged by it for purposes of retrenchment. The company, not having made any profit after the fiscal year ending January 31, 1930, in March, 1931, plaintiff voluntarily accepted a cut in his salary and thereafter accepted several further cuts before his employment terminated. For the fiscal year ending January 31, 1928, the company suffered a net loss of $8000. For the fiscal year ending January 31, 1930, there was a net profit of $42,000. For the fiscal year ending January 31, 1931, there was a net loss of $16,000. For the fiscal year ending on January 31, 1933, there was a net loss of $15,000.

The books of the defendant were audited at the end of each fiscal year by a firm of public accountants. Mr. Lewis, an auditor for the accountants, testified that one of the officers of the defendant, he did not remember who, told him, when the witness made his audit of the books for the fiscal year ending January 31, 1930, to credit plaintiff on the books of the defendant with 4 percent of the net profits of the company for that year, after income taxes had been taken out; that in compliance with this direction, he credited plaintiff on the books of the company with the sum of $1630.89. The officer of the company referred to by the witness Lewis was undoubtedly Lorenzo Luce because Milton H. Luce testified that he did not authorize the credit. However, the latter looked at the statement made by the auditors showing the credit thereon.

Plaintiff testified that he was notified of this credit sometime after it was made and that he spoke to Mr. Lorenzo Luce in reference to it and the latter congratulated plaintiff on having received the credit and said that his only wish was that "in the following years it would be increased." The only notation on the books of the defendant concerning this credit to the name of the plaintiff was the memorandum "due to employees." The word "employees" referred to the plaintiff and one Turpin who were the only employees of defendant buying stock by the method indicated. The credit remained upon the books in that manner during the years 1930, 1931 and a portion of 1932. It was removed from the books of the company in the year 1932 at the direction of Milton H. Luce and a notation made that it was credited to the surplus account of the company.

Milton H. Luce testified that he recalled receiving a letter from the accountants, stating that the credit to plaintiff and Turpin represented "reserve for profits provided in connection with agreements entered into between the Luce Manufacturing Company and R. L. Brown and H. E. Turpin." The letter stated that, although the sum

of $3261.78, the amount credited to the plaintiff and Turpin, represented eight percent of the net profit for the year ending January 31, 1930, after the payment of Federal and State taxes of the defendant, the agreement did not provide for the payment of *profits* to plaintiff and Turpin for the purchase of their captial stock but rather the application of dividends paid thereon toward the purchase price of the stock and that, as the company had lost money, in subsequent years after the credit was made, in amounts more than enough to offset the profit made during the year ending January 31, 1930, the account should be eliminated inasmuch as no dividend had been declared and no earnings were available from which any dividend might be paid.

1. It is clearly shown that defendant was fully solvent during all of the time plaintiff was employed by it. Its balance sheet dated June 30, 1931, shows that the corporation had liabilitities in a sum a little in excess of $17,000, liquid assets consisting of $39,000 in accounts receivable and $103,000 worth of merchandise. There was no formal dividend declared upon the stock of the defendant, either in favor of plaintiff, Turpin, or any member of the Luce family. After plaintiff was discharged he demanded payment of the sum of $1630.89, which he claimed represented a dividend declared on his stock for the fiscal year ending January 31, 1930, and payment being refused he instituted this suit.

The chancellor made a finding of facts and gave declarations of law indicating that he was of the opinion that there is a difference between dividends declared and profits earned; that the credit in question, given to plaintiff on the books of the defendant, was not a declaration of a dividend; that, therefore, he was not entitled to recover for the reason that his contract provided for the payment only of dividends declared upon the stock he was purchasing.

There is no provision in the statute for a finding of facts or declarations of law in the trial of an equity case and, while it is not improper for the chancellor to proceed in this manner, they have no binding force upon the appellate court but are only advisory. [Phillip v. Alford, 90 S. W. (2d) 1060.]

It is well established that there is a difference between the terms "profits" and "dividends." A dividend, as applied to corporate stock, is a part which the corporation has set aside from its net earnings or profits to be divided among its stockholders. Profits are not dividends until so declared or set aside by the corporation. In the meantime the profits are a part of the assets of the corporation and do not belong to the stockholders, individually. [Hayes v. Union Trust Co., 317 Mo. 1028, 1043, 1044; Petty v. Hagan, 265 S. W. 787, 789 (Ky.).]

It will be noted that the contract before us does not provide for a division of the profits but for a declaration of dividends in order

for plaintiff to have any interest in such profits. The question, therefore, to be decided is whether the credit made to plaintiff by the corporation upon its books in the sum of $1630.89, at the direction of its president, which undoubtedly was made in pursuance and in compliance with the contract between the parties, amounted, in effect, to a declaration of a dividend in favor of plaintiff. It is well settled that a dividend may be declared without any formal declaration of the same and that when declared, the word, "dividend" ned not be used in connection with the action in regard thereto. Ordinarily the crediting of a stockholder on the books of a corporation with a portion of the profits of the company amounts to a declaration of a dividend in his favor. It works as a complete severance of the amount of the dividend from the assets of the corporation so as to become the sole and exclusive property of the stockholder. [Reading Trust Co. v. Reading Iron Works, 137 Pa. 282; Grants Pass Hdw. Co. v. Calvert, 142 Pac. 569 (Ore.); Spencer v. Lowe, 198 Fed. 961; Breslin v. Fries-Breslin & Co., 70 N. J. L. 274; Freeman v. Rogers White Lime Co., 211 S. W. 146 (Ark.); Powers-Buchanan v. Powers, 112 Atl. 541 (Pa.); Smith v. Moore, 199 Fed. 689; Hartley v. Pioneer Iron Works, 181 N. Y. 73; In re. Wilson Estate, 167 Pac. 580 (Ore.); Underwood v. Lennox, 136 N. E. 343.]

Of course, ordinarily, when a dividend is declared it is a general dividend applicable to all stockholders. In the case at bar the situation is somewhat different, in that, the defendant corporation was a family affair. It is quite apparent that Mrs. Luce and her two sons, while operating the business under a corporate form, considered it as their own individual property and they were not interested in making any distribution of the profits, as regards themselves. Plaintiff was not in so favorable a situation. He was employed for a limited length of time and was not necessarily interested in an accumulation of profits. He was, of course, very much interested in having the profits made during his employment distributed so that his stock might be paid for, or, in the event it was not paid for, when his services were discontinued, he should receive his part of the profits of the company, profits he had helped to create as superintendent of the defendant. Defendant recognized this difference between the members of the Luce family and plaintiff and Turpin, its employees. When it made such a large profit as that enjoyed in the fiscal year of 1930, it recognized its obligation to them and set aside their part by giving them credit therefor on the books of the company as, of course, plaintiff was not entitled to have his dividends paid in cash.

There is no dispute but that the credit was made in pursuance of plaintiff's contract with the defendant and there is no part of the contract that it could be referable except that part providing for the declaration of dividends. In fact defendant, in its brief, states that

the "credit was set up as a matter of bookkeeping to provide a 're-serve' from which to pay a dividend when and if the same were de-clared."

While this statement shows that the credit had a connection with dividends, we are of the opinion that the credit amounts to more than the creation of a reserve for the payment of future dividends. In fact no one testified that the purpose of the credit was as defendant now contends. Even the letter of the accountants does not use the lan-guage quoted from defendant's brief but if what they stated in their letter is to be construed as meaning what defendant now contends for, then we say that it makes no difference what construction the accountants, who were employed by the defendant, put upon this credit, three years after it was made, by which time it had turned out that the company had not made money in subsequent years, by reason of the depression.

While it is true that, until profits are set aside for the purpose of distribution among the stockholders, a dividend has not been de-clared, when a company goes so far as to definitely set aside a part of its profits, to the account of the stockholders, then under ordinary circumstances, no court would be justified in saying otherwise than that a dividend has been declared. The fact that the company lost money in subsequent years, of course, cannot change matters. [Heus-ser v. Continental Life Ins. Co., 20 Fed. 223.] The contract does not provide for withdrawal of a dividend declared on the stock plaintiff was buying, years after the declaration, such as was attempted in this case. The credit upon its face bears evidence that it was not the purpose of defendant to carry a reserve for dividends and we are convinced that this was not the intention. If this had been the purpose there would have been a transference of the sum to some such account of *defendant's* money and not a credit given to plaintiff for it. In addition to this it should have designated the credit as to re-serves for dividend account when it was made. It knew that it was dealing with plaintiff under the contract with him and fair dealing should have prompted it to act in a clear and unambiguous manner as it alone, without plaintiff even having a voice in the matter, had the power to refuse or declare a distribution of profits. It is now too late for defendant to say that it was creating a reserve for future dividends. Even had it been so doing, defendant has not explained how the fund could be transferred to surplus after it had been credited to reserve for dividends account, if any.

However, it is claimed by the defendant that only the Board of Directors had authority to declare a dividend and that the directors did not authorize the credit in question. In support of this defendant quotes the following from Section 4942, Revised Statutes 1929:

"Dividends of the profits made by the corporation may be declared

by the trustees or directors thereof every six months, or oftener, as the directors may elect.''

Of course, primarily the directors only have power to declare a dividend [14 C. J., p. 807] but in the case at bar the directors turned over their authority in respect to the functions of the corporation to its president who declared the dividend (and it may be inferred that this was done with the acquiescence, if not consent, of the only other active officer and director of the company). Under such circumstances the dividend was properly declared by the president. [Jones v. Williams, 139 Mo. 1.] We have examined the cases of Milligan v. Milligan Grocer Co., 207 Mo. App. 472, and Coleman v. Ins. Co., 273 Mo. 620, cited by the defendant and find them not in point.

The judgment is reversed and the cause remanded with directions to the chancellor to enter judgment in favor of plaintiff in the sum of $1630.89, with interest at the rate of six percent per annum from July 3, 1933. All concur.