Metropolitan Trust Company and Benjamin V. Halstead, Appellants, v. Fred Becklenberg, Appellee.

Gen. No. 40,452.

Opinion filed May 22, 1939. Rehearing denied June 6, 1939.

LEONARD L. COWAN, of Chicago, for appellants; GEORGE D. MILLS, of Chicago, of counsel.

454

ARTHUR ABRAHAM, of Chicago, for appellee.

MR. PRESIDING JUSTICE McSURELY delivered the opinion of the court:

By this suit plaintiffs sought to recover from defendant $387,543.06, which it was claimed defendant owed the Diversey Building Corporation, which was conveyed to the plaintiffs as trustees to secure bonds aggregating $987,500.

Defendant replied that the withdrawals by him of this amount were not in the nature of loans from the corporation to him, but in the nature of dividends, and that as the sole manager and beneficial owner of the entire capital stock of the corporation he was entitled to these withdrawals. The case was tried by the court without a jury, resulting in a finding and judgment for the defendant, from which plaintiffs appeal.

The question presented is whether defendant, being the sole beneficial stockholder of the Diversey Building Corporation, could withdraw funds either from capital or from profits of the corporation, as dividends, without creating any indebtedness by him to the corporation.

In 1924 defendant acquired the lot at the northwest corner of Clark and Diversey streets in Chicago at a cost of $508,385.30; in May, 1924, he organized the Diversey Building Corporation with a capital stock of $100,000, consisting of 1,000 shares of $100 par value each; he conveyed the lot to the corporation, receiving 998 shares issued to and held by him; one share was held in the name of Maria Becklenberg, his wife, and another share in the name of Mildred N. Higgins, an employee; the books of the corporation set up the difference between the cost of the lot and the capital stock as "paid-in surplus"—$408,385.30.

Defendant procured a loan from Greenebaum Sons in the sum of $1,250,000 to erect a building on the lot;

this was evidenced by bonds secured by trust deed dated May 22, 1924; all of the obligations of the bond and trust deed were carried out by defendant and the bond issue was not in default until 1932; in the meantime the principal indebtedness had been reduced to $987,500. Defendant treated the property as his own, collecting the rents from the building and commingling these with the receipts from other properties he owned; he made the necessary disbursements and devoted his time to the operation of the building, receiving no salary for this. Counsel for plaintiffs have gone into the books of the corporation and those of defendant with great detail and from this examination and analysis arrive at the conclusion that they show an indebtedness by defendant to the corporation on January 1, 1934, of $387,543.06, the amount plaintiffs seek to recover. Two sets of books were kept, one of the corporation accounts and the other the personal books of defendant. They purport to show that this sum was the aggregate of withdrawals by defendant from the funds of the corporation, either from profits or the paid-in surplus.

In 1934 a question arose between the defendant and the treasury department of the U. S. A., and auditors were employed to examine the books and make the necessary entries; in May, 1934, resolutions were adopted by the directors of the corporation by which defendant was to be released from his alleged indebtedness of $387,543.06 by the transfer to the corporation of 881 shares of its common stock.

In June, 1934, proceedings to reorganize the corporation under section 77b of the Federal Bankruptcy Act were instituted with requisite consent of the bondholders. The old issue was canceled and discharged and a new bond issue was made, secured by trust deed dated May 1, 1935. Plaintiffs are the trustees under this new trust deed and this suit is brought by them as assignees of the corporation. They do not repre-

sent pre-existing creditors of the corporation and have only such rights as the corporation had at the date they became trustees.

Defendant asserts that a division of the assets of a corporation among its stockholders is a dividend, even though there is no formal declaration of a dividend and even though it is not considered to be such by the directors or stockholders. In other words, no matter what may be shown by the books, defendant, as the beneficial owner of all the stock of the corporation, could withdraw from the assets of the corporation without creating a debt by him to the corporation. A number of cases are cited to the effect that under such circumstances such withdrawals, whether from profits or capital, constitute dividends. A leading case so holding is *E. M. T. Coal Co. v. Rogers,* 216 Ky. 440, 451. There two of the stockholders sold their stock to Taylor and Fowler, two other stockholders, for $10,000 each; at a directors' meeting it was voted that the company should pay this amount to the sellers of the stock; in order to escape complications in the income tax returns this payment purported to be for salaries for the sellers, who had performed no services for the company; later the company became insolvent and creditors brought suit against these sellers to recover back the $20,000 paid to them; the suit was dismissed and on appeal the court affirmed this, saying: ·

"... a division of profits will be deemed and considered in truth such and a dividend though it may not be called such by the directors or the corporation making such distribution. ... The directors started out to make the distribution as a dividend, but later, on advice of counsel, hid it under the form indicated in order to avoid complications with the federal Income Tax Law. But, whatever they called it, it was in truth a dividend or distribution of surplus, and, being declared and distributed at a time when the rights of no creditors or any stockholder were prejudiced thereby,

and at a time when no creditor could have complained, had it been declared as a dividend, it follows that there was nothing in the transaction of which either of the present appellants may complain.''

In *Chattanooga Sav. Bank v. Brewer,* 17 F. (2d) 79 (certiorari denied by the U. S. Supreme Court) Key and James were the sole owners of the capital stock of the Key-James Brick Company; they withdrew funds from the business without corporate action and charged the withdrawals to themselves upon the books of the corporation; the government assessed a tax against Key on the theory that these withdrawals were dividends; despite the fact that these withdrawals appeared on the books of the company as loans the court held that they were dividends. In *In re Wilson's Estate,* 85 Ore. 604, a group of mines were sold belonging to an investment company in which three persons held all the stock; the money received was divided by mutual consent among the stockholders but no entry of the deal was made in the books of the investment company nor was there any declaration of a dividend; one of the stockholders died and the investment company brought suit against his estate to recover the amount received by him for the sale of the group of mines; it was held that the investment company could not recover, the court citing from 2 Cook on Corporations (5th ed.) sec. 534: ''A division of the profits is a dividend even though not called such and not construed such by the directors and stockholders.'' Other cases holding that the distribution of the assets of the company may be made by unanimous consent of the stockholders and is legally a dividend, though not formally declared, and hence cannot be recovered back after being actually paid, are *Barnes v. Spencer & Barnes Co.,* 162 Mich. 509, and *Hadley v. Commissioner of Internal Revenue,* 36 F. (2d) 543. And in Fletcher's Cyc. on Corporations, vol. 11, p. 875, the author says that ''. . . a divi-

sion of profits is a dividend, even though it is not called a dividend and is not considered to be such by the directors or stockholders.'' These cases support the claim that whatever the books of the building corporation may show, the withdrawals constitute dividends.

This is especially true in the case of the defendant, who controlled all the stock of the Building corporation. *Central of Georgia Ry. Co. v. Central Trust Co. of N. Y.,* 135 Ga. 472, involved the question whether the moneys withdrawn by the Railway company from the Steamship company constituted dividends or a loan; the court held that where the profits of a corporation are actually distributed among the stockholders by agreement of all of them, it is the equivalent of declaring a dividend. To the same effect is *Smith v. Moore,* 199 Fed. 689, 697, where it was held that as a general proposition a corporation is an entity distinct from its stockholders, ''nevertheless, where an individual owns practically all of its stock and controls all of the operations of the corporation, they are, in proper cases, regarded by the courts as one and the same.'' A case similar to the case at bar is *Groh's Sons v. Groh,* 80 N. Y. S. 438, where John Groh and his mother and a third person, an employee, owned all the stock; it was held that the appropriation of funds among themselves may be made by agreement of all the stockholders without formal action. See also *Brown v. Luce Mfg. Co.,* 231 Mo. App. 259; *Fidelity & Columbia Trust Co. v. Louisville Ry. Co.,* 265 Ky. 820; *Atherton v. Beaman,* 264 Fed. 878; *Spencer v. Lowe,* 198 Fed. 961; *Ratcliff v. Clendenin,* 232 Fed. 61. Many other cases might be cited, including *Groves v. Farmers State Bank,* 368 Ill. 35, where it was held that money voluntarily paid, with full knowledge of all the facts, cannot be recovered back upon the charge that the claim was illegal unless the payment was made under the circumstances amounting to compulsion.

Plaintiffs bring this action as assignees of the corporation. This being the case, unless the corporation itself could have sued and recovered from defendant the withdrawals made by him they can not recover.

The circumstances clearly show defendant did not intend to create an indebtedness to the corporation. The evidence is all one way—that defendant operated the building as his own property; there was no distinction between the money of the corporation and his own; he operated the building from a downtown office, just as he operated seven or eight other buildings he owned. The books show that the accounts of these properties were mixed with one another and were not kept in any organized manner. Defendant evidently thought that as long as he owned virtually all the stock of the Building corporation he could treat it as his own property. As persuasive evidence that defendant did not intend to create an indebtedness to the Building corporation it should be noted that no note or other written evidence of indebtedness was given to the corporation, no interest was ever paid to it and no demand by the corporation for payment was ever made upon defendant. *Schuberth v. Schillo,* 177 Ill. 346, 350; *Frank v. King,* 121 Ill. 250, 254; *Monroe County Sav. Bank & Trust Co. v. Klohr,* 249 Ill. App. 576, 582, 583.

It was in evidence that defendant had some controversy with the treasury department as to his income taxes. What this department may have decided is not controlling, but it is suggestive that neither defendant nor his accountant ever claimed these withdrawals were loans from the Building corporation, which might have effected a reduction in his income taxes. On the contrary, defendant and his accountant contended before the treasury department that these withdrawals came from the paid-in surplus or capital accounts.

It would unduly lengthen this opinion to attempt to state all the complex and intricate entries shown in the books. Some of these entries are inconsistent with one another, arising apparently out of the controversy with the treasury department. It is also significant that defendant had no knowledge of bookkeeping. He testified he could neither read nor write, that he could sign his name and could read peoples' names if they were typewritten but not if in longhand. But the books, while they show the withdrawals made by defendant from the corporation exceed the amounts expended for the corporation, do not necessarily indicate either a loan or a debt. Although defendant devoted a large part of his time to the operation of the building, the books show no specific items either for dividends or for compensation.

The fundamental facts appear, regardless of bookkeeping entries, that defendant was dealing with his own property, that he was the beneficial owner of all the stock of the Building corporation, that he made certain withdrawals from the assets of the corporation, and that these constituted dividends, either from profits or from capital. There is no evidence that defendant intended to create a debt by these withdrawals.

We have not extended this opinion by discussing all the points made nor cases cited by able counsel for plaintiffs, but have contented ourselves with giving the affirmative reasons for our conclusion. We hold that no reversible errors were committed with reference to the introduction of testimony, especially with reference to the dealings of defendant with the treasury department. Such evidence was admissible as tending to show the intention of defendant.

From the record we are of the opinion the conclusion of the trial court was justified, and its judgment is affirmed.

*Affirmed.*

MATCHETT and O'CONNOR, JJ., concur.