In Re The Marriage: Sybil June HOFF-MANN, Petitioner-Appellant,

v.

Paul Rupert HOFFMANN, Respondent.

No. 65457.

Supreme Court of Missouri,
En Banc.

Sept. 11, 1984.

Richard H. Edwards, Lynn E. Morgenstern, Clayton, for petitioner-appellant.

John A. Turcotte, Jr., Clayton, for respondent.

GUNN, Judge.

Petitioner Sybil Hoffmann (wife) appeals the trial court's decree of dissolution which set aside certain property to respondent Paul Hoffmann (husband) on the determination it was separate, not marital property according to § 452.330, RSMo Cum.Supp. 1983.[1]

The trial court's decree was entered from the adoption of findings of fact and conclusions of law of a special master appointed upon application and consent of the parties. A sharply divided division of the Eastern District affirmed the trial court. Upon application of the wife, transfer to this Court was granted. The case is thus decided as if on original appeal. Rule 83.09. The judgment is affirmed.

The predominant issue on appeal pertains to the status of closely held corporate stock

1. § 452.330, RSMo Cum.Supp.1983 provides:
 1. In a proceeding for nonretroactive invalidity, dissolution of the marriage or legal separation, or in a proceeding for disposition of property following dissolution of the marriage by a court which lacked personal jurisdiction over the absent spouse or lacked jurisdiction to dispose of the property, the court shall set apart to each spouse his property and shall divide the marital property in such proportions as the court deems just after considering all relevant factors including:
 (1) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;
 (2) The value of the property set apart to each spouse;
 (3) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children; and
 (4) The conduct of the parties during the marriage.
 2. For purposes of sections 452.300 to 452.415 only, "marital property" means all property acquired by either spouse subsequent to the marriage except:
 (1) Property acquired by gift, bequest, devise or descent;
 (2) Property acquired in exchange for property acquired prior to the marriage or in exchange

for property acquired by gift, bequest, devise, or descent;
 (3) Property acquired by a spouse after a decree of legal separation;
 (4) Property excluded by valid agreement of the parties; and
 (5) The increase in value of property acquired prior to the marriage.
 3. All property acquired by either spouse subsequent to the marriage and prior to a decree of legal separation is presumed to be marital property regardless of whether title is held individually or by the spouses in some form of coownership such as joint tenancy, tenancy in common, tenancy by the entirety, and community property. The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection 2.
 4. The court's order as it affects distribution of marital property shall be a final order not subject to modification.
 5. A certified copy of any decree of court affecting title to real estate shall forthwith be filed for record in the office of the recorder of deeds of the county and state in which the real estate is situated by the clerk of the court in which the decree was made, and the filing fees shall be taxed as costs in the cause.
 Statutory references will be to RSMo Cum. Supp.1983 unless otherwise stated.

in the husband's name. The wife contends that it is marital property. The husband argues otherwise, viz, it is his separate property, having been in his name prior to the marriage. In treating this aspect, consideration is given to the so-called "inception of title" and "source of funds" rules relating to the question of the status of property rights.

Other points raised by the wife on appeal concern: 1) the trial court's limitations on discovery of financial records of the husband and the family corporation; 2) an alleged miscalculation of the gross maintenance award; 3) failure of the trial court to give consideration to assets alleged to have been squandered by the husband; 4) the determination of attorney's fees and suit monies.

The parties were married in 1963; they separated in 1979. They stipulated to a division of certain marital and separate personal property of a tangible nature. The trial court also made determination and division of other marital property and an award of periodic maintenance.

The major dispute centers on the trial court's award to the husband as his separate property of 223 shares of stock in Lilie-Hoffmann Cooling Towers, Inc. (Lilie-Hoffmann), a closely held corporation in which the husband had worked since 1930. The trial court also assigned a value of $962,662 to the stock.

Lilie-Hoffmann is a family owned corporation, founded by the husband's father and another person who the father eventually bought out. Prior to his marriage to the wife, the husband had acquired 256 shares of the company stock representing 16.17 percent of the shares outstanding. After the marriage, in 1964, the corporation purchased and retired 858 shares owned by the husband's father.[2] The decrease in the total number of outstanding shares caused the husband's interest in the

corporation to increase to 35.3 percent. In 1976, the husband gave 32 shares of the stock to his son. He also had given one share of stock to a newly hired corporate officer in 1966. This reduced the husband's stockholdings to 223 shares, leaving him with a 29.5 percent interest in the corporation.

The husband serves as chief executive officer, president and board director of the corporation. His two brothers and another corporation officer are the only other members of the board of directors.

After the husband's father retired, the corporation prospered due to an increased demand for cooling towers brought about by the Clean Water Act of 1972, 33 U.S.C. § 1251 et seq. The husband's salary as a corporate officer increased steadily between 1964 and 1980. The dividend rate and bonuses to all corporate officers also increased during that period.

The wife worked sporadically after her marriage to respondent, mostly in clerical positions, until 1975. She was a satisfactory homemaker and hostess and traveled on occasion with the husband on business trips.

In dividing the marital and separate property, the trial court awarded the wife the marital residence valued at $110,000 less encumbrances of $26,000 on the basis that the husband possessed a more favorable economic situation and had been guilty of marital misconduct. The trial court also considered the husband's separate property of corporate stock, valued at $926,662, which was set aside to him. Other marital assets, including husband's IRA, two bank accounts and two life insurance policies, were awarded to him as he was the primary contributor.

The wife was awarded attorney's fees of $13,000, $7,024.64 in costs and periodic maintenance of $4,250 per month, as she

---

**2.** The corporation paid the near book value price of $81,510 for the redemption of the father's 858 shares of stock, paid with $1,510 in cash and a corporation note of $80,000 payable in monthly installments of $832.70. The book value of the husband's stock remained the same after the purchase of the father's stock by the corporation. The value of the corporation was reduced by the amount of the purchase price.

was found incapable of supporting herself through appropriate employment.

■ Initially we indite the standard of review governing this appeal: we must sustain the trial court's decree unless there is no substantial evidence to support it, unless it is against the weight of evidence, unless it erroneously declares the law or unless it erroneously applies the law. *Sturgis v. Sturgis*, 663 S.W.2d 375, 379 (Mo.App.1983).

### I.

The wife first contends that the husband's increase in percentage ownership and value of corporation stock is marital property and must be shared with her. Her argument in this regard is threefold: a) redemption of the father's stock transformed the husband's newly increased percentage interest into marital property; b) marital funds and efforts were expended to redeem the stock; c) the increase in value of the stock was due in part to her efforts.

### a.

The trial court adopting the master's findings and conclusions of law found that the husband's stock remained his separate property despite the corporation's purchase and retirement of the father's shares. The guidepost of § 452.330.2 pertaining to this case does not direct otherwise.

■ It is undisputed that the husband held 256 shares of the corporation stock prior to his marriage. That was his separate property. § 452.330.2; *Busby v. Busby*, 669 S.W.2d 597, 599 (Mo.App.1984). The wife asserts, however, that the retirement of the father's stock created a new property interest during the course of the marriage. Hence, she argues, all or a portion of the stock was transformed from separate to marital property. She rests her case on § 452.330.3 and the preposition that all property acquired during the marriage is presumed to be marital property. *McDowell v. McDowell*, 670 S.W.2d 518 (Mo.App.1984). On the other hand, the converse proposition exists that all proper-

ty not included within the definitive terms of § 452.330.2 and .3 is presumptively separate property. *Busby v. Busby*, 669 S.W.2d at 599. Therefore, unless there is evidence of record to indicate an intent to change the status of the stock from being the husband's separate property, it should not be considered marital property. *Davis v. Davis*, 544 S.W.2d 259, 263 (Mo.App. 1976).

■ We have not been provided any authority for the wife's postulation that the increased percentage of ownership of a corporation by a stockholder due to retirement of stock converts the stock from separate to marital property. Instead, it is more logical to conclude that the increased equitable interest of the husband would remain as a statutory exemption to marital property. Section 452.330.2(2) provides that any property acquired during marriage in exchange for property acquired prior to marriage is separate property. The husband's new ownership interest at least may be viewed as such an exchange for a former interest.

■ The exchange analogy is appropriate because the husband received no additional value as a result of the retirement of certain stocks. Although redemption of the corporate stock from Mr. Hoffmann, Sr. decreased the number of outstanding shares from 1,583 to 725, thereby increasing the husband's respective ownership in the corporation from 16 to 35 percent, the book value and number of shares in his possession did not deviate. This is because the worth of the corporation was diminished by the amount paid from the corporate treasury to repurchase the father's stock. Therefore, the 16 percent ownership interest acquired prior to the husband's marriage was merely exchanged for a larger ownership percentage of a corporation that was worth less.

A similar analogy regarding the absence of effect on separate property status of stock is found in stock splits—a circumstance somewhat akin to that at hand. The additional shares acquired by a split constitute an exchange under § 452.330.2(2); *In*

*re Marriage of Bruske*, 656 S.W.2d 288, 295 (Mo.App.1983).

We therefore reject the wife's contention that the increase of percentage of ownership of the corporation transformed a portion or all of the husband's stock to marital property.

### b.

The wife also lays claim to the increased equitable ownership of the corporation as marital property, as she alleges that marital funds and efforts were expended to redeem the stock.

Although a copy of the repurchase agreement was not produced for evidence, the financial audit of the company for 1964 indicated that salary restrictions on corporate officers as provided in the repurchase agreement were followed. The wife alleges that during the year of repurchase, the corporation operated at a loss and that funds used for the repurchase must have come from what would have otherwise been paid as salary to her husband as a corporate officer. She states that the money denied him as salary and used to repurchase stock amounted to marital funds. She argues that a lien should have been imposed on the husband's newly acquired 19 percent ownership in the corporation to the extent marital funds were spent on its acquisition.

Although our appellate courts recognize liens in favor of the marital unit against separate property when marital funds are expended to reduce a debt or enhance the value of the asset in question, *Busby v. Busby*, 669 S.W.2d at 599; *Bishop v. Bishop*, 658 S.W.2d 512, 515 (Mo.App. 1983); *Rickelman v. Rickelman*, 625 S.W.2d 901, 902 (Mo.App.1981); *Ravenscroft v. Ravenscroft*, 585 S.W.2d 270, 272 (Mo.App.1979), no evidence was presented that the funds used to redeem the stock would otherwise have been paid by the corporation to the husband in the form of salary or dividends. Absent such evidence, we find no merit in petitioner's contention that marital funds or efforts were expended to redeem the stock, and we deny the imposition of a lien.

### c.

The wife offers yet another argument that a portion of the increase in the value of the stock in the corporation is attributable to marital funds and efforts. She stresses that the increase in value of the stock in the corporation was attributable, at least in part, to the husband's management efforts as president, chief executive officer and director of the corporation. She also cites that she contributed to the marital partnership as a satisfactory homemaker and hostess and readily accompanied and sought to assist the husband on business trips whenever he requested.

As previously noted, the husband's 256 shares of stock acquired before his marriage is his separate property. § 452.330.2; *Busby v. Busby, supra.* By statutory exception, any increase in the value of property acquired prior to the marriage also is separate property. § 452.330.2(5); *Cain v. Cain*, 536 S.W.2d 866, 870 (Mo.App.1976).

The crux, then, is not whether the wife contributed to the value of separate property. Rather, the key issue is whether the stock was wholly "acquired" prior to the marriage. Krauskopf, *Marital Property at Marriage Dissolution*, 43 Mo.L.Rev. 157, 180 (1978). The interpretation given to the term "acquired" determines whether the marital unit receives any portion of the appreciated value of the property which is due to general economic conditions.

Two major theories have been employed by the courts in interpreting this term: "inception of title" and "source of funds." Both doctrines are premised upon community property concepts which have their roots in Spanish law. Note, *Marriage Dissolution: An Equitable Approach Toward Property Distribution*, 45 Mo.L.Rev. 538, 540 (1980); Note, *Dissolution of Marriage-Division of Property Which Has Increased in Value*, 42 Mo.L.Rev. 479, 480–81 (1977).

The courts of appeal in Missouri have followed the principles of the inception of

title theory. *Busby v. Busby, supra; Davis v. Davis, supra; Stark v. Stark,* 539 S.W.2d 779 (Mo.App.1976); *Cain v. Cain,* 536 S.W.2d 866 (Mo.App.1976). This approach classifies property as separate or marital at the moment title is taken. Even if marital funds are employed to reduce indebtedness on the separate property, the character of the property remains separate. *Busby v. Busby,* 669 S.W.2d at 599.

In applying the basic concepts of the inception of title theory, however, Missouri appellate courts often have imposed such a lien for the purpose of reimbursing the marital unit for its contribution to the enhancement or purchase of the separate asset. *Whitenton v. Whitenton,* 659 S.W.2d 542, 548 (Mo.App.1983); *Bishop v. Bishop,* 658 S.W.2d at 515; *Puckett v. Puckett,* 632 S.W.2d 83, 85 (Mo.App.1982); *Ravenscroft v. Ravenscroft,* 585 S.W.2d at 272. In lieu of a lien, the person in whose name the separate property is titled has been directed to make payments to his spouse for the share of marital funds which were used to decrease the indebtedness on separate property. *Rickelman v. Rickelman,* 625 S.W.2d at 902. But in each of these aforecited cases the courts have limited reimbursement to the exact amount of marital funds expended. No reimbursement has been awarded for increased values attributable to general economic conditions.

Because application of the inception of title theory deprives the non-owning spouse of any appreciable return on his or her investment, it has been the subject of substantial criticism. *Harper v. Harper,* 294 Md. 54, 448 A.2d 916 (1982); Krauskopf,

*Marital Property at Marital Dissolution,* 43 Mo.L.Rev. 157 (1978); Note, *Dissolution of Marriage-Division of Property Which Has Increased in Value,* 42 Mo.L. Rev. 479 (1977); Note, *Marriage Dissolution: An Equitable Approach Toward Property Distribution,* 45 Mo.L.Rev. 538 (1980).

As commentators have noted, the traditional inception of title theory was adopted by our appellate courts soon after the new Marriage and Dissolution Act became law in 1974 as an aid in interpreting the unfamiliar concepts of community property, upon which the Act was based. 45 Mo.L. Rev. at 546. But the inception of title theory is losing favor to the "source of funds" rule which is considered to be more equitable. *Id.*

Under the source of funds rule, the character of the property is determined by the source of funds financing the purchase. The property is considered to be acquired as it is paid for so that a portion of the property's ultimate value will be marital property. 43 Mo.L.Rev. at 180. This approach to property distribution upon dissolution emphasizes a theory of marital partnership. It has been adopted both by community property states and by states which have equitable distribution schemes similar to Missouri, *e.g., Harper v. Harper,* 448 A.2d at 929; *Tibbetts v. Tibbetts,* 406 A.2d 70, 76 (Me.1979); *Moore v. Moore,* 28 Cal.3d 366, 371–72, 618 P.2d 208, 210, 168 Cal.Rptr. 662, 664 (1980).

Of those states which have adopted the source of funds doctrine, Maine has a statute nearly identical to § 452.330.[3] Therefore, Maine appellate court decisions inter-

---

3. ME.REV.STAT.ANN. tit. 19, § 722–A (Supp. 1979) provides in part:
1. Disposition. In a proceeding: (a) for a divorce ..., the court shall set apart to each spouse his property and shall divide the marital property in such proportions as the court deems just after considering all relevant factors....
2. Definition. For purposes of this section only, "marital property acquired by either spouse subsequent to the marriage except:
A. Property acquired by gift, bequest, devise or descent;

B. Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise or descent;
C. Property acquired by a spouse after a decree of legal separation;
D. Property excluded by valid agreement of the parties; and
E. The increase in value of property acquired prior to the marriage.

preting its statute merit consideration and comment.

The Maine Supreme Court has noted that the marital community should be entitled to share in the proportionate increase in value of the property attributable to improvements made by marital funds and labor. *Tibbetts v. Tibbetts*, 406 A.2d at 76–77. That court further recognizes that if the marital unit was deprived of a proportionate share in the value of improvements added with marital funds, an incentive exists for a sophisticated spouse to divert marital funds for the improvement of separate property. *Hall v. Hall*, 462 A.2d 1179, 1182 (Me.1983).

In analyzing both approaches of classifying property for division in marital dissolution,[4] we find that the source of funds theory is the preferable method to apply in Missouri. Although a majority of jurisdictions currently adhere to the inception of title rule,[5] we believe its employment in an era when property values can change dramatically is inequitable.

Further, we follow other jurisdictions which have adopted the source of funds approach with statutes similar to Missouri by defining the term "acquired" as being an "on-going process of making payment for acquired property". *Harper v. Harper*, 448 A.2d at 929;[6] *Tibbetts v. Tibbetts*, 406 A.2d at 77.

■ By adopting this definition of "acquired" and the source of funds theory, our statutes and their purpose of promoting the partnership theory of marriage will be consistent in providing for the most equitable distribution of property. Therefore, we

reverse the trial court's application of the inception of title rule and adopt the source of funds approach in dividing property at dissolution. Past Missouri cases applying the inception of title rule, *e.g. Cain, Stark,* and *Busby*, should no longer be followed in that regard.

In applying these newly adopted standards, however, we find that no uncompensated marital efforts of funds are attributable to the increase in value of the corporation's stock in the present case. The wife thus gains no benefit from the application of source of funds concept in this instance.

The wife raises the point that the community property concept contemplates that the community owns the earning potential of each spouse. For example, when a spouse is employed in a business, a portion of the business assets attributable to that spouse's skills and talents is community property.

■ In this case, the husband's management efforts and leadership of his family corporation obviously had an impact on the increase in value of the corporate stock. His position with company was no sinecure. But he also was paid a salary and received bonuses and dividends for his services which became marital property and in which the wife will share. *Norman v. Norman*, 604 S.W.2d 680, 683 (Mo.App. 1980). But the wife seeks not only the salary and dividend marital property, she wants to share in the enhanced value of the corporation brought about by the husband's efforts. While this is a legitimate theory to pursue, it does not redound to her benefit in this case. The wife has failed by

---

4. A third approach, followed by Illinois, holds that where there has been a contribution of marital property to non-marital property, the entire property is transmuted to marital property. *In re Marriage of Lee*, 87 Ill.2d 64, 58 Ill.Dec. 779, 430 N.E.2d 1030, 1032 (1981). We reject the application of the Illinois transmutation of property theory because to permit nonmarital property to be "transmuted" into marital property and therefore, to be subject to equitable distribution deprives a spouse of nonmarital property and is, therefore, contrary to our legislative intent.

5. *Potthoff v. Potthoff*, 128 Ariz. 557, 562–63, 627 P.2d 708, 713–14 (Ct.App.1981); *Fisher v. Fisher*, 86 Idaho 131, 136, 383 P.2d 840, 842–43 (1963); *Harris v. Harris*, 160 So.2d 359, 360–61 (La.Ct. App.1964); *Laughlin v. Laughlin*, 49 N.M. 20, 37, 155 P.2d 1010, 1020–21 (1944); *Dakan v. Dakan*, 125 Tex. 305, 320, 83 S.W.2d 620, 628 (1935); *Villarreal v. Villarreal*, 618 S.W.2d 99, 100–01 (Tex.Civ.App.1981).

6. *Contra Cain v. Cain, supra,* in which "acquire" was defined as "to come into possession, control or power of disposal of," 536 S.W.2d at 872.

any proof to establish the value of the husband's services to the corporation or that he had indeed sacrificed payment of marital funds, by way of salary or dividends, in order to increase the value of the corporation's stock. It would require substantial speculation to conclude that the stock's value had appreciated in any amount due to the husband's forsaking marital property compensation for his services.

It is clear from the record that the unusual growth and prosperity of the company was directly attributable to the unforeseen but salutary (for the corporation) consequences of federal and state legislative enactments vis-a-vis sole efforts of the husband.

There was also evidence relating to the salaries, bonuses and dividends to all corporate officers. This was considered by the trial court in reaching its decision. None of this evidence would justify a finding that the husband was inadequately compensated for his working efforts during the corporation's growth. Hence, the trial court's judgment that marital property was not used to increase the corporation's value was properly supported by credible evidence. We will not substitute our judgment to reach a different result. *In re Marriage of Bruske,* 656 S.W.2d at 295.[7]

The wife's contention that her services and efforts as a homemaker, traveling companion and entertainer were contributions made to the enhancement of the stock's value has no merit, as she made no substantial financial contributions to the business nor were her personal contributions sufficiently extensive to warrant additional compensation by sharing in the hus-

band's separate property. *Sturgis v. Sturgis,* 663 S.W.2d at 381. Further, the trial court gave recognition to her efforts as evidenced by the substantial maintenance award to her.

## II.

The wife asserts that the trial court erred in accepting the husband's expert's opinion as the valuation of the stock of the corporation. Both parties presented expert witness testimony with regard to the value of the stock. The wife's expert evaluated the husband's stock holdings in the corporation as $2,723,000. The husband's expert countered with $962,662. Both experts capitalized the earnings of the corporation, but the husband's expert discounted the value by 45 percent due to a lack of public market for the stock, the husband's minority interest and the fact that the corporation manufactured only one product.

It is, of course, difficult to evaluate the stock of a closely held corporation. But deference is given to the trial court's coign of vantage to judge credibility of witnesses. *Busby v. Busby,* 669 S.W.2d at 599; *Oldfield v. Oldfield,* 666 S.W.2d 17, 19 (Mo.App.1984). The weight to be given opinion evidence is for the trier of fact. *City of Lake Lotawana v. Lehr,* 529 S.W.2d 445, 452 (Mo.App.1975). Therefore, the trial court could accept the testimony of the husband's expert and reject the wife's.

## III.

The wife next argues that the trial court erred in holding that the retained earnings of the corporation did not constitute marital property and were not excessive. She

---

**7.** Under community property theory, increases in the value of property during the marriage is not considered marital property if the spouse who owned the stock prior to the marriage is neither a controlling stockholder nor an employee of the corporation. The source of funds used to acquire the property can be traced entirely to the spouse who owned the property before marriage.

On the other hand, where the corporation merely serves as the *alter ego* of stockholder,

and the corporation serves primarily as a means to divert marital funds for the benefit of only the one spouse, the corporate veil has been pierced to attribute a portion of the increase of the stock's value to the marital unit. *Dillingham v. Dillingham,* 434 S.W.2d 459 (Tex.Ct.App. 1968). The present case is distinguishable, however, because the husband did not hold a controlling interest in the corporation, and his personal finance dealings were shown to be in accordance with good faith business practices.

contends that if the board of directors had voted to distribute the corporate profits to the stockholders and officers, rather than retain them within the corporation, the income to the husband would have been marital property. *Norman v. Norman,* 604 S.W.2d at 683. She alleges that the husband's position and influence in corporate affairs permitted him to control what should have been marital property by concealing it under the corporate veil as retained earnings.

■■■ Generally, the wife could not claim the retained earnings as marital property, because the earnings and profits of a corporation remain its property until severed from other corporate assets and distributed as dividends. *St. Charles Bldg. & Loan Ass'n v. Webb,* 229 S.W.2d 577, 581 (Mo. 1950). And, of course, the wife as a non-stockholder has no standing to call for a declaration of a dividend. That is a concern between the stockholders and directors, with only the directors empowered to declare a dividend. § 351.220, RSMo 1978.[8,9]

Missouri courts have not addressed the issue of whether retained earnings in a closely held corporation constitute marital property. *Norman v. Norman,* 604 S.W.2d at 683. Other jurisdictions which have considered the issue cite the critical distinguishing factors as being a controlling interest in the corporation by the owner spouse and substantial control over decisions to distribute corporate earnings. *J.D.P. v. F.J.H.,* 399 A.2d 207 (Del.1979); *Mifflin v. Mifflin,* 97 Idaho 895, 556 P.2d 854 (1976); *Simplot v. Simplot,* 96 Idaho 239, 526 P.2d 844 (1974); *Speer v. Quinlan,* 96 Idaho 119, 525 P.2d 314 (1973).

■■■ But the husband only owned 29.5 percent of the outstanding corporate stock and was not a controlling shareholder. Further, as only one of four board members, he could not unilaterally declare or withhold dividends. Declaration of dividends is a matter within the discretion of the board of directors. § 351.220, RSMo 1978; *see St. Louis Southwestern Ry. v. Meyer,* 364 Mo. 1057, 272 S.W.2d 249, 256 (1954), *appeal dismissed,* 349 U.S. 942, 75 S.Ct. 871, 99 L.Ed. 1269 (1955), *reh. denied,* 350 U.S. 856 (1955); *Long v. Norwood Hills Corp.,* 380 S.W.2d 451, 477-78 (Mo. App.1964). With the absence of evidence of collusion with other board members to defraud petitioner of marital property by minimizing dividends, the trial court's finding will not be disturbed, as it is supported by substantial evidence.

The wife's additional contention that retained earnings were in excess of the reasonably anticipated needs of the business is not considered. This Court is without jurisdiction to determine the issue, as "[j]udgments can only be taken for or against a party to the action...." 49 C.J.S. *Judgments* § 28 (1944). Petitioner also lacks standing to challenge corporate board decisions.

## IV.

The wife complains that the trial court erred in limiting discovery of certain documents. She had requested the financial statements and tax returns of the corporation and the personal banking records of the husband from the time of their marriage in 1963 until the time of trial, urging only that they were generally "relevant".

Upon objection by the husband, the trial court limited discovery to records of the corporation from 1975–1980 and to his records from 1974 to the time of the trial. The trial court found the original discovery request unduly broad and burdensome. On appeal the wife pursues a new theory and makes the more specific contention that the records she was denied would have proven

---

8. *But see Brown v. Luce Mfg. Co.,* 231 Mo.App. 259, 96 S.W.2d 1098, 1102 (1936), in which directors of closely held corporation relinquished their authority over declaration of dividends to the president.

9. We recognize that in a closely held corporation the shareholders may have a superior opportunity for manipulation of corporate activities and control of corporate and individual assets. 1 O'Neal, *Close Corporations,* § 1.09a (2d 1971).

that a portion of the money expended by the corporation on the stock redemption would have been paid to the husband as salary and was therefore marital property.

The trial court's determination of the relevancy of a discovery request is subject to reversal only upon a showing of abuse of discretion. *State ex rel. Norfolk & Western Ry. v. Dowd*, 448 S.W.2d 1, 4 (Mo. banc 1969). Further, the wife bears the burden of demonstrating the relevancy and materiality of documents sought to be discovered and that they are reasonably calculated to lead to the discovery of admissible evidence. *State ex rel. Bush v. Elliott*, 363 S.W.2d 631, 633 (Mo. banc 1963); *State ex rel. Kuehl v. Baker*, 663 S.W.2d 410, 411 (Mo.App.1983); Rules 56.01(b).

In the present case, the wife made no record of her arguments in support of her discovery motion. She may not assert some new theory on appeal. *McDowell v. McDowell*, 670 S.W.2d at 521; *Blair v. Blair*, 600 S.W.2d 143, 145 (Mo.App.1980).

The record is destitute of any contention she seeks to make on appeal; she has failed to demonstrate on the record the relevancy of the documents to the trial court. Thus, there was no abuse of discretion in the court's order permitting only limited discovery of the financial records.

## V.

The wife alleges the trial court erred in the award of maintenance by misapplying the tax tables.

The court awarded the wife annual periodic maintenance of $51,000, and included within the award $12,240 per year for estimated income taxes. The wife complains that her tax liability will be approximately $24,000 per year, thus, reducing her net income.

There is no allegation that the maintenance award is insufficient to meet her needs. Indeed, it is scarcely penurious. Nor does the record establish that the court ignored the factors set forth in § 452.335, RSMo 1978 in determining the maintenance award. The record on the

motion to amend the decree on the basis of miscalculation indicates that the award was not an error in calculation.

The provision in the award for $12,240 to cover income taxes was merely an estimate. Because of other variables, it is impossible to accurately assess the wife's future tax liability. The trial judge has substantial discretion in awarding maintenance, *Mills v. Mills*, 663 S.W.2d 369, 374 (Mo.App.1983), and is not required to meet all the needs of the spouse receiving the award. *Raines v. Raines*, 583 S.W.2d 564, 567 (Mo.App.1979). No abuse of discretion on the part of the trial court appears on this point.

## VI.

The wife contends that the husband dissipated certain marital assets.

During the marriage the husband converted a joint savings account of $3,700 to his name and withdrew $3,000. He also cashed life insurance policies and certificates of deposit. There is no evidence that the husband has secreted or has squandered the marital property in anticipation of divorce. Therefore, it would not be appropriate to order reimbursement of funds to the wife. *Calia v. Calia*, 624 S.W.2d 870, 872 (Mo.App.1981). We defer to the trial court's findings in this regard.

## VII.

The wife's final point is that the trial court erred in failing to award her the full amount of attorney's fees and expenses requested.

The husband was ordered to pay $13,000 of the $34,328 remaining balance of legal fees and $7,024 of the $9,024 remaining balance of expenses. The award was based on findings of fact indicating that the legal research was tardy and pursued meritless issues, depositions were unnecessarily detailed and witness fees were excessive.

The trial court is vested with broad discretion in awarding attorney fees,

§ 452.355, RSMo 1978, and abuse of discretion is a prerequisite to an overturn of such awards. *McDowell v. McDowell*, 670 S.W.2d at 524; *Dallas v. Dallas*, 670 S.W.2d 535, 541 (Mo.App.1984). No abuse is shown here, and the point is denied.

The judgment is affirmed.

HIGGINS, BILLINGS, and DONNELLY, JJ., concur.

RENDLEN, C.J., concurs in result.

WELLIVER, J., concurs in result in separate opinion filed.

BLACKMAR, J., concurs in part and dissents in part in separate opinion filed.

WELLIVER, Judge, concurring in result.

I concur in result. I do not believe adoption of the "source of the funds" test is necessary to the disposition of this case. Abandonment of the "inception of title" test and adoption of the "source of the funds" test only serves to saddle an already overburdened judiciary with a tedious task of tracing that generally will be as undeterminative of the case as the discussion was herein.

BLACKMAR, Judge, concurring in part and dissenting in part.

I wholly agree in the principal opinion's rejection of the "inception of title" rule as exemplified by several court of appeals opinions but never adopted by this Court, and in the espousal of the "source of funds" rule. The rule adopted accords with the purpose of the marriage dissolution statutes and gives trial judges the authority to approach the problems of holdings in close corporations realistically.

The "close corporation" is a significant concept in modern jurisprudence.[1] A close corporation has many similarities to a partnership.[2] An increase in value of shares in a close corporation is often the result of the personal services of major stockholders who are also officers or employees. The source of funds approach allows the trial court, given adequate proof, to treat a portion of the increased value of shares of stock as marital property, even though the shares were acquired prior to marriage. Any other approach would exalt substance over form and would greatly magnify the importance of the choice of business association.

I am not satisfied, however, that the appellant wife had full opportunity to present her theory to a trial court properly instructed in the doctrine which this Court now applies. The case below was tried before a master,[3] who applied the "inception of title" rule as controlling law. The trial judge apparaently adopted the master's findings, conclusions and recommendations as rendered. It is highly unlikely that the result below would have been affected by any evidence the wife might have adduced on the effect of her husband's labors on the value of his shares in the corporation. The trial court also appears to have limited discovery substantially. The principal opinion holds that the points relied on in the appeal were not fully presented to the trial court. In court-tried cases it is often difficult to determine what was presented. I would opt for clarification.

The principal opinion argues that redemption of the husband's father's stock in 1964 was a neutral transaction because the redemption was at "book value." Book

---

1. F.H. O'Neal, *Close Corporations,* § 1.02 (1971); *Galler v. Galler,* 32 Ill.2d 16, 203 N.E.2d 577 (1964); *Donahue v. Rodd Electrotype Co. of New England, Inc.,* 367 Mass. 578, 328 N.E.2d 505 (1975), specifying the principal characteristics of the "close corporation" as: "(1) a small number of stockholders; (2) no ready market for the corporate stock; and (3) substantial majority stockholder participation...." *Id.* at 586, 328 N.E.2d at 511.

2. *Donahue v. Rodd Electrotype Co. of New England, Inc.,* 367 Mass. 578, 586–87, 328 N.E.2d 505, 512 (1975); Ebrahimi and Westbourne Galleries, Ltd., [1973] A.C. 360; Blackmar "Partnership Precedents in a Corporate Setting—Exit From The Close Corporation", 7 Journal of Corporation Law, 237 Winter 1982.

3. The master was an experienced senior circuit judge, selected with the approval of the parties.

value, however, is not a reliable guide to the true value of corporate stock.[4] It rather is an accounting concept, based on the historic cost of acquisition of assets. There is the distinct possibility that the respondent might have derived a very substantial economic advantage through the use of corporate earnings for redeeming his father's stock. If the analysis relied on by the respondent's expert in valuing his shares is sound, furthermore, his shares would derive increased value through an increase in the percentage of ownership. The appellant should have the chance to develop the redemption issue further, with opportunity for appropriate discovery.

Nor is it a sufficient analysis of the problem to suggest that the husband may have been adequately compensated for his efforts by salary, during the years of the marriage, so that no additional marital property would be created through increase in value of his shares. The persons in control of a closely held corporation have broad discretion in determining how much they want to take out of the corporation in salary and dividends and how much of the earnings they want to retain in the corporate treasury. Management often elects to plow back earnings in the hope of realizing future values, or because payouts would be subject to federal income tax. A decision which is entirely sound from the standpoint of corporate policy, still might operate to the disadvantage of a shareholder's spouse so as to deprive the spouse of a share of the fruits of the shareholder's labor. The spouse should not be required to demonstrate fraud or bad faith. It should be sufficient to show that the increase resulted from personal effort.

The partnership analogy is helpful. The income of a partnership must necessarily be reflected in the individual returns of each of the partners, and the income derived from the partnership by a married partner would be marital property. The difference should not be too great simply because the business is operated in corporate form.

The circumstance that the husband did not have majority voting control of the corporation is not significant. His associates have chosen him as chief executive officer, and he necessarily was in a position to exercise substantial influence over corporate decisions, including those affecting salaries and retention of earnings. Respondent was in the position of senior partner. The absence of absolute control should not operate to defeat his wife's legitimate interests.

The principal opinion observes that some of the increased value of the shares was attributable to government policy which accentuated the demand for the company's product. The trial court did not quantify the increase so occasioned, and the principal opinion concedes that a substantial portion of the increase was occasioned by respondent's efforts. The record is not sufficient to permit us to reach a definitive conclusion.

Judge Gerald M. Smith, dissenting in the court of appeals, argued in favor of recognizing the rights of the spouse of a shareholder, while recognizing that there would be "substantial difficulties in evidence and proof." I agree with his statement that these difficulties furnish no warrant for treating the spouse inequitably, and reject any suggestion that our courts are so overburdened that they do not have the time to do equity. I hope that this Court's decision will point the way to trial courts and to attorneys as to what must be shown in order that the spouse of a shareholder may present the required proof. The present plaintiff, however, should have the opportunity to present additional proofs so that a properly instructed trial court could decide her rights based on the newly recognized principles in Judge Gunn's opinion.

I concur in Parts II, V, VI and VII of the principal opinion, but would remand for

---

4. Henn and Alexander, Law of Corporations, 3d Ed. (West, 1983), p. 766, fn. 18 and accompanying text.

further hearing touching Parts I, III and IV.